Martin A. MOODY, Appellant,

v.

UNITED STATES, Appellee.

Nos. 2572–2576.

Municipal Court of Appeals for the District of Columbia.

Argued June 13, 1960.

Decided Aug. 5, 1960.

Rehearing Denied Sept. 9, 1960.

---

12. Jackson v. Hall, Fla., 97 So.2d 1, 3.

William J. Garber, Washington, D. C., for appellant.

Maurice R. Dunie, Asst. U. S. Atty., Washington, D. C., with whom Oliver Gasch, U. S. Atty., and Carl W. Belcher, Asst. U. S. Atty., Washington, D. C., were on the brief, for appellee.

Before ROVER, Chief Judge, and HOOD and QUINN, Associate Judges.

QUINN, Associate Judge.

Appellant was convicted by the court, trial by jury having been waived, on two counts of unlawful entry,[1] two of petit larceny,[2] and one of possessing numbers slips.[3] On appeal, he contends that the trial court committed error in denying his motion to suppress certain evidence on the ground that it had been secured by search and seizure in contravention of the Fourth Amendment. He also complains that as a matter of law there was insufficient evidence to convict him of the charge of possessing numbers slips. These are the facts:

On October 24, 1959, at 1:30 a. m., an officer of the Metropolitan Police, in response to a radio call reporting a fight, proceeded to the 1600 block of U Street, N.W., where he encountered the complaining witness, Willie Johnson, Jr., who was standing on the sidewalk, holding appellant. Johnson told the officer that appellant had broken into his apartment on two occasions and had stolen various items of personalty, consisting of wearing apparel, a tape recorder, and a camera. He further stated that thirty minutes earlier he had seen some of the missing articles in appellant's apartment, located on the second floor of the same building wherein Johnson resided; that upon making a demand for the return of the property, appellant fled to the street. Johnson, in pursuit, finally apprehended appellant at the spot where they were met by the officer.

1. Code 1951, § 22–3102 (Supp. VIII).

2. Code 1951, § 22–2202 (Supp. VIII).

3. Code 1951, § 22–1502 (Supp. VIII).

During trial, Johnson explained in greater detail the events occurring before the officer's arrival. At 1 a. m., accompanied by one Phelps and one Roberts, he observed appellant, wearing one of the stolen garments, playing cards in the kitchen on the first floor of the apartment building. After questioning appellant, the four men went up to appellant's apartment. While Johnson discussed the matter with appellant, Phelps and Roberts remained in the hallway where they witnessed appellant's hasty departure. This testimony was substantiated by Phelps.

The officer testified that as a result of the accusations, he placed appellant under arrest, and at Johnson's suggestion they returned to the apartment building so that he might verify that a crime had been committed. During the ensuing investigation appellant was left in the custody of another officer in the patrol car. According to the testimony of Johnson and the officer, they found the door to appellant's apartment standing open and the missing items scattered about the floor, plainly visible from the hallway. Johnson entered the apartment, gathered up the articles claimed to be his, and then handed them to the officer, who had remained in the hallway. There was no indication in the record that the officer did anything to induce Johnson's actions or that he made any effort to deter him. Phelps, who had waited in the hallway with the officer when Johnson retrieved the articles in question, corroborated this testimony.

The officer also testified that a notebook was taken from appellant's person during the search conducted at the police precinct. A member of the Gambling Squad of the Metropolitan Police testified that, in his opinion, two pages of the notebook were numbers slips used or to be used in the operation of a lottery.

While testifying, appellant asserted that he was the owner of the property and stated that the notebook was merely a record of numbers he had played. He denied writing numbers and maintained that the notebook had not been taken from his person but was removed from one of the articles appropriated from his apartment.

In Burdeau v. McDowell, the Supreme Court ruled that the mandate of the Fourth Amendment prohibiting unreasonable searches and seizures is intended as a restraint upon persons acting under color of governmental authority and does not apply to the independent undertakings of private citizens.[4] Accordingly, certain papers, stolen from the defendant by private detectives and later turned over to federal authorities, were properly used in a criminal prosecution against him. As no official of the government had any connection with the theft, or any knowledge thereof, until many months later, there was no infringement of the constitutional guarantee. Since that decision the Supreme Court has not been called upon to further examine a search and seizure conducted by a private person and to consider its effect on the admissibility of the evidence thereby obtained.

A second class of cases was also accorded immunity from the operation of the exclusionary doctrine derived from the Fourth Amendment. These involved situations drawing into issue the admissibility of evidence procured by the unlawful search and seizure of state officials. Until recently it was widely held that such evidence could be introduced into a federal criminal proceeding[5] unless federal agents participated in the acquisition thereof[6] or

4. 1921, 256 U.S. 465, 41 S.Ct. 574, 65 L. Ed. 1048.

5. See, e. g., United States v. Moses, 7 Cir., 1956, 234 F.2d 124; Gallegos v. United States, 10 Cir., 1956, 237 F.2d 694; Milburne v. United States, 2 Cir., 1935,

77 F.2d 310; Brown v. United States, 9 Cir., 1926, 12 F.2d 926. But see Hanna v. United States, 1958, 104 U.S.App. D.C. 205, 260 F.2d 723.

6. Byars v. United States, 1927, 273 U.S. 28, 47 S.Ct. 248, 71 L.Ed. 520.

unless the local police secured the evidence solely on behalf of the federal government.[7] Under the decision of Elkins v. United States, the silver platter doctrine may no longer be invoked to legitimize evidence seized by state police without the knowledge or cooperation of federal agents.[8] If the search and seizure would have been unlawful had it been committed by federal authorities, the evidence remains tainted and must be excluded in a federal court.

Since the avowed purpose of the Fourth Amendment is to safeguard one's privacy from the arbitrary intrusion of the police, whether state or federal, it appears that Elkins would leave intact the decision of the Burdeau case. We must, therefore, rely on the reasoning of Burdeau and the concept of participation as discussed in the silver platter cases to determine whether there was such involvement on the part of the arresting officer in the present case that responsibility for the search and seizure must be attributed to the police authorities.

In Lustig v. United States, the Supreme Court analyzed the meaning of participation, and we believe its language provides an important guide for our consideration here. The Court there stated:

> "The crux of that doctrine is that a search is a search by a federal official if he had a hand in it; it is not a search by a federal official if evidence secured by state authorities is turned over to the federal authorities on a silver platter. The decisive factor * * * is the actuality of a share by a federal official in the total enterprise of securing and selecting evidence by other than sanctioned means. It is immaterial whether a federal agent originated the idea or joined in it while the search was in progress. So long as he was in it before the object of the search was completely accomplished, he must be

deemed to have participated in it. * * *"[9]

■ Under the aforementioned standard, we believe that there was a participation by the arresting officer and that the complaining witness acted as an arm of the police in reducing the articles to possession. The construction to be attached to the Fourth Amendment does not permit of evasion by circuitous means. The protection thus afforded may be violated just as effectively through the intervening agency of one not a policeman. While no objection can be raised to the propriety of the arresting officer's conduct in merely viewing the articles from the adjacent hallway, we cannot characterize him as a willing but innocent beneficiary in standing silently by while the appropriation was taking place. The officer certainly recognized the evidentiary value of the goods themselves. He could not therefore escape the necessity of obtaining a search warrant when he had the reasonable alternative of posting a guard at the door until the warrant could be procured.

Admittedly, the complaining witness only recaptured goods to which he, as owner, was legally entitled; nevertheless, such fact is not controlling in considering the legality of the means by which the stolen articles came into the possession of the police under the circumstances of this case. The problem rather is whether the physical goods could be used as evidence to convict the accused of the crime.

However, the government contends that the convictions should be affirmed because there was, in addition, substantial evidence upon which the convictions can rest— namely, the officer's testimony as to what he saw. We do not agree. The Supreme Court has admonished:

> "If, when all is said and done, the conviction is sure that the error did not

---

7. Gambino v. United States, 1927, 275 U.S. 310, 48 S.Ct. 137, 72 L.Ed. 293.

8. 1960, 80 S.Ct. 1437, 4 L.Ed.2d 1669.

9. 1949, 338 U.S. 74, 79, 69 S.Ct. 1372, 1374, 93 L.Ed. 1819, 1823.

influence the jury, or had but very slight effect, the verdict and the judgment should stand, except perhaps where the departure is from a constitutional norm * * *." [10]

While it is true that this case was tried by the court without a jury, we are not compelled to say that appellant, by waiving a jury, also waived his constitutional right.

 With respect to appellant's notebook and the conviction for illegal possession of numbers slips, we cannot disturb the finding of the trial court. There was conflicting evidence as to the means by which the notebook was acquired, and as an appellate tribunal, we must restate that we are not authorized to resolve questions of

fact under such circumstances. As to the sufficiency of the evidence regarding the conviction, we feel that this point has been fully settled by the decision in Ferguson v. United States,[11] so that it is unnecessary for us to examine this problem further. An expert witness testified that two pages of the notebook were numbers slips and appellant admitted that he had played those numbers. On the basis of the foregoing, the conviction for illegal possession of numbers slips is affirmed, and the convictions for the other four charges are reversed.

Judgment in No. 2572 is affirmed.

Judgments in Nos. 2573, 2574, 2575, and 2576 are reversed.

10. Kotteakos v. United States, 1946, 328 U.S. 750, 764–765, 66 S.Ct. 1239, 1248, 90 L.Ed. 1557, 1566.

11. 1956, 99 U.S.App.D.C. 331, 239 F.2d 952.