STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. ANDREW SCROTSKY, DEFENDANT-APPELLANT.

Argued January 8, 1963—Decided March 4, 1963.

*Mr. Robert G. O'Brien* argued the cause for defendant-appellant.

*Mr. Peter Murray,* Assistant Prosecutor of Essex County, argued the cause for plaintiff-respondent (*Mr. Brendan T. Byrne,* Prosecutor of Essex County, attorney; *Mr. Peter Murray,* of counsel and on the brief).

The opinion of the court was delivered by

FRANCIS, J.   Defendant was convicted of unlawful entry and of larceny in violation of *N. J. S.* 2A :94–1 and 2A :119–2. Following sentence to State Prison, the Appellate Division affirmed his conviction and we granted certification.   In this court the appeal was predicated in part upon the ground (not raised in the Appellate Division) that the evidence which resulted in the conviction was produced by unlawful search and seizure.   The trial and conviction took place on December 3, 1959 and sentence was imposed on January 28, 1960.   Defendant's brief in the Appellate Division was filed 19 days before *Mapp v. Ohio,* 367 *U. S.* 643, 81 *S. Ct.* 1684, 6 *L. Ed.* 2d 1081 (1961), was decided.   After study of the record, we concluded in the light of *Mapp* that a remand to the trial court should be ordered to permit both defendant and the

State to introduce evidence bearing upon the legality of the search of Scrotsky's premises and seizure therein of the incriminating articles. Our opinion directed such course to be taken and the completed record, with the trial court's finding thereon, be returned to us. 38 *N. J.* 14 (1962). The testimony was taken, the search and seizure were adjudged lawful and the matter returned to us for review. 77 *N. J. Super.* 42 (*Cty. Ct.* 1962).

▮ As indicated in the earlier opinion, there was a conflict in the testimony at the original trial as to defendant's guilt of the offenses charged. The proof was ample, however, to support the jury's verdict and affirmance of the conviction must follow unless the allegedly stolen articles taken from Scrotsky's apartment and put in evidence, were the product of an unconstitutional search. Determination of that question requires an examination of the circumstances under which the police entered the premises.

As our first opinion noted, the complaining witness, Lucille Seymore, owned an apartment building on Oriental Street, Newark, New Jersey. It had three entrances, each of which had a street number, 60, 62 and 66 Oriental Street. Mrs. Seymore occupied an apartment at 66 Oriental Street; Scrotsky and his wife rented an apartment from her on the second floor of 60 Oriental Street. The trial court found she did not reserve any right of entry as part of the letting. In the evening of August 23, 1959, on returning to her residence, Mrs. Seymore found that it had been broken into and some personal effects taken. Very shortly thereafter, she claimed she saw Scrotsky going over the back fence carrying a duffle bag. An unsuccessful hunt for the fugitive was made in the neighborhood, following which Mrs. Seymore and a police officer returned to the apartment building. No effort was made to enter Scrotsky's quarters.

Later in the same evening, Mrs. Seymore and two police officers came to defendant's apartment. He was not home but after identifying themselves, his wife allowed them to enter. While there, Mrs. Seymore pointed out certain articles which

she said were stolen from her. All three left taking none of the property with them.

The next day Mrs. Seymore and the same officers returned to Scrotsky's apartment. No one was at home but the door was unlocked and they went in. She identified her property for them and they told her a detective would be sent to bring the articles to headquarters. Again, they left without taking anything. At the direction of the police, however, she came back and put one or two padlocks on the door.

On August 25 Mrs. Seymore re-entered defendant's apartment. She was accompanied by a police detective, and in his presence reclaimed her allegedly stolen property. The detective told her to put it in a suitcase and bring it to headquarters. As she packed the suitcase he made a list of what she was taking. Thereafter, they went to police headquarters where, after the articles were photographed, she was allowed to take them home. They remained in her possession until the trial date. Scrotsky was arrested on the public street near the apartment building later in the same day. He was not at home during any of the described visits.

The State concedes the nonexistence of a search warrant. Moreover, no warrant for Scrotsky's apprehension was issued until August 27, two days after his arrest.

In *Mapp v. Ohio, supra,* the United States Supreme Court held that the federal rule which excludes in criminal trials evidence obtained by illegal search and seizure is applicable equally to the state courts. It was declared specifically that all evidence procured by searches and seizures in violation of the Fourth Amendment of the United States Constitution "is, by that same authority, inadmissible in a state court" (367 *U. S.*, at *p.* 655, 81 *S. Ct.*, at 1691). Proof of entry by police officers into a person's home without a proper search warrant, and the taking of articles to be used in support of a criminal charge against him, without more, makes out a *prima facie* case for suppression of the seized evidence.

The State contends that even though the officers had neither arrest warrant for Scrotsky nor warrant to search his premises,

the exclusory rule should not be applied because Mrs. Seymore, the landlady and owner of the property, and not the officers, made the search and removed the incriminatory articles. But Mrs. Seymore had no right of entry. The apartment had been rented to Scrotsky and no right of re-entry had been reserved. Under the circumstances present at the time, her claim to admission was no greater than that of a stranger. She could not give any higher status to herself or to the officers as against the tenant. Obviously, she went into the apartment with the officers and seized the property under color of their authority and as a participant in a police action. In a similar situation, the United States Supreme Court declined to accept such an entry by officers at the authorization of a landlord as constitutional justification for a search and seizure. In reversing the conviction based upon evidence obtained in that fashion, the court said that to uphold such search and seizure without a warrant would reduce the Fourth Amendment to a nullity and leave tenants' homes secure only in the discretion of landlords. *Chapman v. United States*, 365 *U. S.* 610, 81 *S. Ct.* 776, 617, 5 *L. Ed.* 2d 828, 833 (1961).

It is idle to say that the officers did not conduct the search or seizure the articles later used to convict Scrotsky; that they simply accompanied Mrs. Seymore while she entered his apartment, searched for and reclaimed her property. For purposes of applying the test of the Fourth Amendment, she must be considered their instrument. The suggestion is that if she had gone there on her own, entered and retrieved the allegedly stolen property, and turned it over to the authorities, it would have been admissible in evidence in the subsequent prosecution because there was no official participation in the illegal search and seizure. And, the argument proceeds, that since the officer, although entering with her, stood by while she located the property, and then told her to put it in a suitcase and take it along to headquarters, he was a spectator and not an efficient actor in the proceeding. The contention is unrealistic. Despite the existence of ample time to obtain a search warrant, the detective and Mrs. Seymore went to the

apartment without a warrant, in the afternoon of August 25, 1959 for a dual purpose, she to recover her property, he to investigate and obtain evidence of Scrotsky's crime. The search and seizure by one served the purpose of both, and must be deemed to have been participated in by both.

The State relies on *Burdeau v. McDowell*, 256 *U. S.* 465, 41 *S. Ct.* 574, 65 *L. Ed.* 1048 (1921), which holds that the Fourth Amendment against unreasonable searches and seizures operates only as a restraint upon sovereign authority. Consequently, where a private person steals or unlawfully takes possession of property from the premises of the owner and turns it over to the government, which did not participate in the taking, it may be used as incriminating evidence against the owner in a subsequent criminal prosecution.

The case is not applicable here. In the present situation, the search and seizure resulted from unlawful concert of action on the part of Mrs. Seymore and the police officers. *Lustig v. U. S.*, 338 *U. S.* 74, 79, 69 *S. Ct.* 1372, 93 *L. Ed.* 1819, 1823 (1949). Mrs. Seymore simply acted as an arm of the police in reducing the articles to possession. *Moody v. U. S.*, 163 *A.* 2d 337 (*Mun. Ct. App. D. C.* 1960). Thus, *Mapp v. Ohio* stands squarely in the path of their use against Scrotsky, and a conviction based upon their admission in evidence cannot stand. And, see *State v. DeGrazio*, 39 *N. J.* 268 (1963); *People v. Loria*, 10 *N. Y.* 2d 368, 223 *N. Y. S.* 2d 462, 179 *N. E.* 2d 478 (*Ct. App.* 1961).

Since there is no basis upon which the search and seizure of the articles introduced in evidence can be sustained from a constitutional standpoint, defendant's conviction must be reversed and a new trial granted. The Fourth Amendment, like other safeguards established by the Federal Constitution, sometimes affords shelter for criminals. But, as the late Justice Jackson observed, our forbears did not think this was too great a price to pay for the privacy of homes which is indispensable to the individual's dignity and self-respect. "They may have overvalued privacy" but the intervening years have not demonstrated that the protection given is less

valuable to our society than an unregulated right of police intrusion. *Harris v. U. S.*, 331 *U. S.* 145, 197, 198, 91 *L. Ed.* 1399, 1431–32 (1947).

▋ Our decision means that the seized articles cannot be introduced on a retrial. It does not signify that all reference to them or some of them is precluded. As has been noted above, according to testimony introduced by the State, in the late evening of August 23, the day of the theft, Mrs. Seymore and two officers came to the Scrotsky apartment. He was not at home, but after the officers identified themselves, Mrs. Scrotsky opened the door and asked them to come in. The room they entered was the *living room*. There in plain sight Mrs. Seymore saw and recognized some of the articles she claimed had been stolen from her. One in particular, a wrist watch, was on top of a dresser; others, which it is difficult to specify from the record, were likewise in plain view. In our opinion, Mrs. Seymore's testimony in reference to *such* property (*i. e.*, that which she saw without search), describing it specifically, would be competent, even though the articles themselves cannot be introduced in evidence. The situation is different, however, as to additional articles claimed to be hers which she observed in the other rooms as she went into and through them looking for her stolen property. Proof as to them would be as inadmissible as the articles themselves after they were seized.

▋ In our earlier opinion (38 *N. J.*, at *p.* 18), we noted that the wrist watch mentioned above was not listed in the accusation as one of the articles allegedly stolen from Mrs. Seymore. Obviously, the omission was an oversight because in the written statement given by her to the police two days after the unlawful entry, she referred to a wrist watch as one of the stolen articles. Moreover, the detective who was present in Scrotsky's apartment on August 27 when the property was retaken by her and brought to headquarters, testified that a wrist watch was included. He said also that although she was allowed to take the seized articles home, he prepared and retained a "property voucher" on which they were set forth.

A wrist watch was listed thereon. The voucher was produced at the hearing on the remand. Under the circumstances, the accusation may be amended at or before the retrial to add the wrist watch to the itemization of the stolen property.

Reversed.

*For reversal and remandment*—Chief Justice WEINTRAUB, and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN—7.

*For affirmance*—None.