**James GREEN, Petitioner,**

v.

**Howard YEAGER, Warden, New Jersey State Prison, Respondent.**

**Civ. A. No. 653–63.**

United States District Court

D. New Jersey.

Nov. 13, 1963.

New Jersey State Prison in this District. He was confined there to serve consecutive sentences imposed by the Essex County (New Jersey) Court, for atrocious assault and battery, and for robbery, imposed in that order, after separate jury trials and convictions on these respective charges. At the time of his trial and conviction for robbery, he was also tried and convicted for carrying a concealed weapon, but sentence upon the latter conviction was suspended. He has made written applications to this Court for a writ of habeas corpus with respect to each sentence, but the instant application relates only to his custody under the sentence for robbery and his conviction for carrying a concealed weapon.

From the filing of the present application, on August 5, 1963, to the present, petitioner has been confined in the State Prison only pursuant to the sentence for robbery because he has served the maximum on the prior sentence for atrocious assault and battery. He was first sentenced on the assault charge on January 30, 1959, but that conviction was reversed on April 20, 1960 after he had served part of the sentence. He was retried and convicted again on the same assault charge on January 9, 1961, but in the meantime he had engaged in the activity in November, 1960, which led to the charges of robbery and carrying a concealed weapon. He was sentenced on the second assault conviction on March 1, 1961 to a term of 3 to 5 years, and the next day, March 2, he was convicted of the robbery and concealed weapon charges. On March 22, he was sentenced on the robbery charge to a term of 5 to 7 years to be served consecutively to the prior assault sentence, and he received a suspended sentence on the concealed weapon charge.

Although the two consecutive sentences would be, for the purpose of determining eligibility for parole, aggregated for a total minimum term of 8 years and a total maximum of 12 years, R.S. 30:4–123.10, N.J.S.A., the sentences must be viewed separately for the pur-

James Green, pro se.

WORTENDYKE, District Judge.

James Green is in the custody of the State of New Jersey and confined in the

pose of determining petitioner's right to question his custody by a writ of habeas corpus. The Court has been informed, by a letter dated November 6, 1963, from Donald C. Thoms, Senior Classification Officer of the New Jersey State Prison, that, giving petitioner all the credits due him on the assault sentence, such as those for commutation time and for time served on the original assault conviction, the maximum time on the assault sentence had been served by petitioner on October 24, 1962. Consequently, from that date to the present, petitioner's custody has been based solely on the robbery sentence, which he attacks by the present application.

This Court, on August 30, 1963, ordered respondent, the Warden of the New Jersey State Prison, to show cause why petitioner was in his custody and to produce the petitioner before the Court. Pursuant to that Order, a hearing was held by this Court on October 14, 1963 at which petitioner appeared *pro se* and the State was represented by the Prosecutor of Essex County. The only testimony given was that of the petitioner, in his own behalf.

Green represents that, on November 11, 1960, he resided with a woman in a room at 293 Mulberry Street, Newark, New Jersey and that late that night his room was entered and searched by officers of the Newark Police Department, without warrant for the search or for his arrest. He was subsequently arrested in a public street on the same night, and his person was searched incident to that arrest. On January 16, 1961, the Essex County (New Jersey) Grand Jury returned two indictments: #760–60, against Alice Brown (the woman with whom Green says he lived at the time of the offense charged therein) and against "James X. Green" (intended to designate the present applicant), charging them with robbery in violation of N.J.S. 2A:-141–1, N.J.S.A., on *November 11*, 1960; and #761–60 against "James X. Green" (also intending to designate the present applicant), charging him with carrying a concealed weapon, on *November 12*,

1960, in violation of N.J.S. 2A:151–41, N.J.S.A. These indictments were tried together. Green, represented by counsel, was found guilty under both indictments. He was sentenced to 5 to 7 years in State Prison on the robbery indictment (#760) and received a suspended sentence on the concealed weapon indictment (#761). From these convictions, he appealed to the Appellate Division of the Superior Court of New Jersey which affirmed them on January 25, 1963. His grounds for reversal on that appeal were (1) the trial judge made a prejudicial comment to a witness, (2) the prosecutor was seen to speak to members of the jury outside of the court room during the trial, (3) evidence obtained through illegal search and seizure was admitted, (4) lack of warrant for his arrest, and (5) defendant was prejudiced by the erroneous use of the middle initial "X" in his name in the indictments and during the trial. Petitioner thereafter filed with the Clerk of the Supreme Court of New Jersey a document entitled "Application and Petition for Writ of Habeas Corpus", accompanied by a motion for leave to proceed thereon as an indigent. These applications were treated by that Court as a petition for certification, which it denied by its order of April 1, 1963.

This Court has perused a transcript of the proceedings upon the trial of the petitioner which commenced on March 1, 1961. The evidence produced upon that trial discloses that, on the evening of November 11, 1960, one Barayasarra, while consuming alcoholic beverages in a tavern in the City of Newark, New Jersey, was solicited by a woman patron whom he accompanied to a room in which she lived with the petitioner, where all three of these individuals continued to indulge in the consumption of whiskey over a period of hours. During that period, certain articles of personal property were taken from Barayasarra, allegedly through threats and batteries made to him and upon his person, resulting in physical injury. After the robbery and alleged beating and in the absence of the

petitioner and the woman with whom he was living, Barayasarra left the place of the robbery and complained thereof to the municipal police, with whose cooperation he received clinical medical treatment. He thereafter guided representatives of the police department back to the room in which the alleged beating had occurred. The room was then unoccupied, and the door thereof was either open or unlocked. Representatives of the police department examined the interior of the room and found therein some of the articles which had been taken from the victim. Thereafter, still accompanied by the victim, the representatives of the police department left the room and sought petitioner and the woman with whom he lived. Upon their being pointed out on the street by the victim, the police arrested petitioner and the woman and, in the course of that arrest, searched his person and removed therefrom the victim's wrist watch, which petitioner was then wearing, and a knife susceptible of use as a dangerous weapon which petitioner was carrying concealed upon his person. Some of the articles of personal property which had been taken from the victim and found by the police on their visit to petitioner's room prior to his arrest were admitted in evidence on petitioner's trial, without objection by petitioner's trial counsel.

The grounds presently relied upon for the allowance of the writ by this Court are: (1) illegality of the search and seizure at the time of petitioner's arrest; (2) lack of a warrant for his arrest; (3) prejudice to petitioner resulting from the trial court's comment to a witness; and (4) allegedly prejudicial conduct by the prosecutor in talking to the jurors outside of the court room. These grounds were urged by petitioner in the appellate court and ruled upon adversely to him there. Green's pending application (here) was supplemented by his letter of August 7, 1963 to this Court, in which he complains that the erroneous use of the middle initial "X" in his name, as set forth in the indictments and referred to during the trial, was prejudicial

in that such a letter was frequently used by members of a sect, known as "Muslims", which encourages interracial antagonism. The same ground had been urged by Green in the Appellate Division and was also rejected by that Court as a ground for reversal.

Petitioner argued, in his brief on appeal, that no warrant had been obtained for his arrest, and that a watch and knife which had been removed from his person were admitted in evidence at the trial. He also complains of the admission in evidence of a wallet and a dollar bill taken by the police from the home of the petitioner, which, he charges, was entered and searched by the police without a warrant. Relying on Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), petitioner argued in the Appellate Division that his alleged crime had been committed prior to the arrival of the police, and that the search of petitioner's room was conducted without warrant, out of petitioner's presence and without his consent. That court held, respecting petitioner's contention that he was convicted by the use of illegally obtained evidence: "This case does not justify invoking the doctrine of Mapp v. Ohio * * *. Here the conviction was not predicated upon unlawfully seized evidence. The crucial exhibits—defendant's knife and the victim's wrist watch—were taken from the defendant incident to a valid arrest. The wallet, check and dollar bill found on the floor of the room on Mulberry Street were property belonging to the complaining witness. The police did not make an exploratory search of the premises. There is a complete absence of any bad faith or indifference to constitutional rights. A crime had been committed and the law enforcement officers were in fresh pursuit of the criminal. Mapp v. Ohio, supra, is inapplicable." The Appellate Division affirmed petitioner's conviction on January 25, 1963, and he thereafter sought relief from the New Jersey Supreme Court by a "Petition for Writ of Habeas Corpus" which the Supreme Court, on April 1, 1963, treated as a peti-

548

tion for certification to the Appellate Division and denied for lack of merit. Raising the same questions here as in his appeals, petitioner has fully complied with the exhaustion of State remedies requirement of 28 U.S.C. § 2254. He did not have to petition the United States Supreme Court for certiorari after the affirmance by the New Jersey Supreme Court. Fay v. Noia (1963) 372 U.S. 391, 435–438, 83 S.Ct. 822, 9 L.Ed.2d 837. Nor did petitioner have to exhaust any other available New Jersey remedies, since he had fully pursued one course of State appellate review on these five grounds. Brown v. Allen (1953) 344 U.S. 443, 447–450, 73 S.Ct. 397, 97 L.Ed. 469.

■ The primary question posed by the pending application for a writ of habeas corpus is whether the admission in evidence, upon the petitioner's trial, of the articles of personal property found by the municipal police in the room in which the petitioner resided[1] violated petitioner's Federal constitutional rights under the doctrine of Mapp v. Ohio, supra. A second and subordinate question is presented in this connection: whether the failure of petitioner's counsel to object to the admission of these exhibits in evidence constituted an effective waiver of petitioner's constitutional right to exclude their admission. The present application for a writ, although attacking the convictions for both robbery and carrying a concealed weapon, can only question the conviction for robbery since petitioner's present custody is based only on that conviction. The conviction for carrying a concealed weapon cannot be the basis for an application for a writ of habeas corpus since petitioner received a suspended sentence on that charge, and the writ cannot issue if there is no restraint of liberty. Witte v. Ferber, 3 Cir. 1955, 219 F.2d 113; United States ex rel. Rinaldi v. State of New Jersey, 3 Cir. 1963, 321 F.2d 885.

The generality of the language of the opinion in Mapp v. Ohio, supra, has been delimited and qualified in Ker v. California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed. 2d 726 (1963). The opinion in Ker, (at pp. 30–32 of 374 U.S., at pp. 1628–1629 of 83 S.Ct., 10 L.Ed.2d 726), states that Mapp, although imposing on the States under the Fourteenth Amendment the same constitutional standard barring unreasonable searches and seizures and the same constitutional prohibition on the use of evidence obtained by such unreasonable searches as those imposed by the Fourth Amendment on the Federal Government, implied no total obliteration of State laws relating to arrests and searches in favor of Federal law and did not lay down a fixed formula for application in specific cases of the constitutional provision against unreasonable searches and seizures. The Court, in Ker, supra, at pp. 32–33 of 374 U.S., at pp. 1629–1630 of 83 S.Ct., 10 L.Ed.2d 726, points out that Mapp " * * * recognized that * * * '[r]easonableness is in the first instance for the [trial court] * * * to determine'." It also quoted the statement in Go-Bart Importing Co. v. United States, 282 U.S. 344, 51 S.Ct. 153, 75 L.Ed. 374 (1931) that, " '[t]here is no formula for the determination of reasonableness. Each case is to be decided on its own facts and circumstances.' "

In Harris v. United States, 1947, 331 U.S. 145, 67 S.Ct. 1098, 91 L.Ed. 1399, the majority opinion had this to say respecting a defendant's rights under the Fourth Amendment (p. 150 of 331 U.S. p. 1101 of 67 S.Ct., 91 L.Ed. 1399): "The Fourth Amendment has never been held to require that every valid search and seizure be effected under the authority of a search warrant. * * * The opinions of this Court have clearly recognized that the search incident to arrest may, under appropriate circumstances, extend beyond the person of the one arrested to include the premises under his im-

---

[1]. The State conceded at the hearing on the present application that petitioner's occupancy of the room gives him stand-ing to attack the constitutionality of the search.

mediate control. * * * It is equally clear that a search incident to arrest, which is otherwise reasonable, is not automatically rendered invalid by the fact that a dwelling place, as contrasted to a business premises, is subject to search. * * * " However, the Court distinguished the facts in Harris, where the search was found to be reasonable, as "not a case in which law enforcement officials have invaded a private dwelling without authority and seized evidence of crime * * * [n]or * * * a case in which law-enforcement officers have entered premises ostensibly for the purpose of making an arrest but in reality for the purpose of conducting a general exploratory search for merely evidentiary materials tending to connect the accused with some crime." (p. 153 of 331 U.S., p. 1102 of 67 S.Ct., 91 L.Ed. 1399). At p. 154 of the same opinion [p. 154 of 331 U.S., p. 1103 of 67 S.Ct., 91 L.Ed. 1399], the Court emphasizes a distinction "between merely evidentiary materials, on the one hand, which may not be seized either under the authority of a search warrant or during the course of a search incident to arrest, and on the other hand, those objects which a crime is committed, the fruits which may validly be seized including the instrumentalities and means by of crime such as stolen property, * * * and property the possession of which is a crime." Citing Boyd v. United States, 1886, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746; Weeks v. United States, 1914, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652; Gouled v. United States, 1921, 255 U.S. 298, 41 S.Ct. 261, 65 L.Ed. 647; Carroll v. United States, 1925, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543; Agnello v. United States, 1925, 269 U.S. 20, 46 S.Ct. 4, 70 L.Ed. 145; Marron v. United States, 1927, 275 U.S. 192, 48 S.Ct. 74, 72 L.Ed. 231; and United States v. Lefkowitz, 1932, 285 U.S. 452, 52 S.Ct. 420, 76 L.Ed. 877.

In the case before us here, the victim of the robbery, in guiding the police officers to the place where the robbery was committed, and the officers in accompanying the victim to the place and entering the same, were actuated by the dual motives of the arrest of the robber and the recovery of the stolen property. The room which was entered was not broken into, the door being either unlocked or open. The room was unoccupied at the time of the entry, and the recovery of the stolen articles was made in the absence of the defendant and prior to his arrest.

In the more recent case of Chapman v. United States, 1961, 365 U.S. 610, 81 S.Ct. 776, 5 L.Ed.2d 828, a conviction based upon evidence procured by a search without warrant of a tenant's residence, in his absence therefrom and prior to his arrest, despite the consent of the landlord, was reversed upon the ground that the fruits of the search were inadmissible under the Fourth Amendment. Although not expressly stated in Chapman, the clear implication of that opinion is that any evidence obtained by a warrantless search of any premises in the absence of the accused, whether the subsequent arrest be with or without a warrant, is inadmissible solely on the basis that the search was not incident to but preceded a lawful arrest. The only exception to this rule would be where "compelling circumstances", such as the threatened destruction of evidence, exist. See United States v. Jeffers, 1957, 342 U.S. 48, 51–52, 72 S.Ct. 93, 96 L.Ed. 59; Ker v. California, supra, 42, footnote 13 of 374 U.S., p. 1634 of 83 S.Ct., 10 L.Ed.2d 726. This rule was applied to facts almost identical to those in the present case in Walker v. Peppersack, 4 Cir. 1963, 316 F.2d 119. There defendant was convicted by a State court of armed robbery, and some of the stolen articles, discovered in a warrantless search of defendant's room prior to his arrest on the street, were used as evidence.

Although the standards of the constitutionality of a search and seizure are the same under the Fourth and Fourteenth Amendments and are therefore to be determined by the Federal rather than the State courts (Ker v. California,

supra, pp. 33–34 of 374 U.S., pp. 1629–1630 of 83 S.Ct., 10 L.Ed.2d 726), it is clear in the present case that New Jersey law would rule the evidence obtained from petitioner's room inadmissible. We find State v. Scrotsky, 1963, 39 N.J. 410, 189 A.2d 23,[2] controlling authority for declaring the admission of the evidence, of which the present petitioner complains, violative of his constitutional rights under the rule enunciated in Mapp.

The facts in Scrotsky are strikingly similar to those which petitioner here presents. A landlady discovered that the apartment in which she resided had been broken into and some personal effects taken. She claimed that she saw Scrotsky shortly thereafter climbing over her back fence, carrying a bag. After an unsuccessful hunt for him in the neighborhood, the landlady and police officers came to Scrotsky's apartment, which was in the same building. Scrotsky was not at home, but, after identifying themselves, they were allowed to enter by Scrotsky's wife. When in the apartment, the landlady pointed out certain articles which she claimed had been stolen from her. The following day, she and the same officers returned to the apartment. Finding no one at home but the door unlocked, they entered. She identified her property and, at the direction of the police, she put one or two padlocks on the door. On a later occasion, she reentered the defendant's apartment, accompanied by a police detective, reclaimed her allegedly stolen property and brought it to police headquarters where the articles were photographed. She was then allowed to take them home. Scrotsky was arrested later the same day on the street near the building. The New Jersey Supreme Court, in condemning the search, used the following language, at p. 416 of 39 N.J., at p. 26 of 189 A.2d: "In the present situation, the search and seizure resulted from unlawful concert of action

on the part of Mrs. Seymore and the police officers [citing Lustig v. United States, 338 U.S. 74, 79 [69 S.Ct. 1372, 93 L.Ed. 1819] (1949)]. Mrs. Seymore simply acted as an arm of the police in reducing the articles to possession. * * * Thus, Mapp v. Ohio stands squarely in the path of their use against Scrotsky, and a conviction based upon their admission in evidence cannot stand."

█ In view of the Chapman and Scrotsky cases, supra, this Court holds that the search of petitioner's room on November 11, 1960, without a warrant, while petitioner was absent from the room and before his arrest on the street, violated the Fourteenth Amendment as it incorporates the Fourth Amendment's prohibition of unreasonable searches and seizures, and the evidence obtained from the illegal search was inadmissible under Mapp on the trial in the Essex County Court. It should be noted that the State of New Jersey has not shown, either at the original trial or at the hearing before this Court, the existence of any "compelling circumstances" which would have authorized the search, without a warrant, under the rule of the Chapman and Scrotsky decisions.

█ No objection was made at the original trial, by defendant or his counsel, to the admission of the illegally obtained evidence. The trial, however, was conducted and the verdict was rendered and sentence was imposed before the decision of the Mapp case. Consequently, at the time of the trial, any objection to the admission of the evidence in the New Jersey court would have been futile. The failure to so object, therefore, would not bar the raising of that issue on an application for habeas corpus in this Court. Walker v. Peppersack, supra, 126–128 of 316 F.2d. The State of New Jersey has been liberal in permitting the raising of objections to such inadmissible evidence in cases where no objection

---

**2.** Scrotsky was decided by the New Jersey Supreme Court on March 4, 1963, after petitioner's conviction was affirmed by the Appellate Division on January 25,

1963. His petition for certification to the New Jersey Supreme Court was denied on April 1, 1963.

was made or the evidence was admitted by consent before the Mapp decision. See, e. g., State v. Doyle, 1963, 40 N.J. 320, 191 A.2d 478.[3] Indeed, petitioner here was allowed to raise the issue in his appeal to the Appellate Division of the State Superior Court.

■ The Court's finding that the admission of the evidence obtained from the search of the room violated due process under the Fourteenth Amendment requires a vacation of the judgment of conviction and the sentence of petitioner on the robbery charge, even though there was other admissible evidence which alone would have been sufficient to convict him of the charged robbery. Brown v. Allen, 1953, 344 U.S. 443, at p. 475, 73 S.Ct. 397, at p. 416, 97 L.Ed. 469, stated that a violation of due process, consisting in the admission in evidence of a coerced confession, renders the conviction illegal "even though the evidence apart from the confessions might have been sufficient to sustain the jury's verdict. Malinski v. New York, 324 U.S. 401 [65 S.Ct. 781, 89 L.Ed. 1029]." The opinion in Brown adds that "[n]either does it matter that there possibly is evidence in the record independent of the confessions which could sustain the verdict." On the trial of the present petitioner, there was evidence that he had participated in the beating and robbery of the victim in the room in Newark. It was to that room that the victim led the police, and it was in that room that the articles of the victim's property were found and taken possession of by the police. These articles, although not property of the petitioner but of the victim, would otherwise have been admissible in evidence as corroborative of the victim's testimony relating to the place of the beating and robbery of his per-

son. It cannot be said that the admission of these articles into evidence played no part in persuading the jury of the truth of the testimony of the victim.

■ The remaining grounds raised by petitioner need not be decided. The alleged errors in the remarks by the trial judge and the conduct of the prosecutor have become moot; the alleged error in the name of petitioner can be raised again if he is retried. Petitioner's final contention that his arrest without a warrant was illegal is one which cannot be a ground for the issuance of a writ of habeas corpus. United States ex rel. Williams v. Myers, D.C.Pa.1961, 196 F. Supp. 280.

This Court's decision, although vacating petitioner's *conviction* and *sentence* for robbery,[4] leaves standing the Essex County Grand Jury indictment #760–60 against him. Pursuant to 28 U.S.C. § 2243, which permits this Court to "dispose of the matter as law and justice require," this Court will order petitioner discharged from the custody of the respondent only insofar as that custody is pursuant to the judgment and sentence under indictment #760–60, but such discharge shall be subject to the right of the State of New Jersey to retain custody under the said indictment and to proceed to a timely retrial of him on the charge of robbery under indictment #760–60. Dowd v. United States ex rel. Cook, 1951, 340 U.S. 206, 210, 71 S.Ct. 262, 95 L.Ed. 215; Chessman v. Teets, 1957, 354 U.S. 156, 166, 77 S.Ct. 1127, 1 L.Ed.2d 1253; Grandsinger v. Bovey, D.C.Neb.1957, 153 F.Supp. 201, 240, affd. 8 Cir. 1958, 253 F.2d 917, cert. den. 1958, 357 U.S. 929, 78 S.Ct. 1373, 2 L.Ed.2d 1371; United States ex rel. Brown v. Smith, D.C.Vt. 1962, 200 F.Supp. 885, 892.

3. In Scrotsky, the conviction reviewed took place on December 3, 1959 and sentence was imposed on January 28, 1960. The defendant's brief on appeal in the Appellate Division of the New Jersey Superior Court was filed only 19 days prior to the decision in Mapp. The Appellate Division had affirmed the con-

viction, but the Supreme Court reversed upon the authority of Mapp.

4. The conviction and suspended sentence for carrying a concealed weapon are not affected by this decision; neither are the conviction and sentence for atrocious assault and battery.

It is therefore, on this 13th day of November, 1963, ordered that the petitioner, *James Green*, be discharged from the custody of the respondent only insofar as that custody is pursuant to the conviction and sentence of 5 to 7 years for robbery imposed by the Essex County Court on March 22, 1961; and

It is further ordered that the aforesaid discharge of petitioner shall be subject to the right of the State of New Jersey to retain petitioner in its custody under the Essex County indictment for robbery, No. 760–60, and to proceed to a timely retrial of petitioner under that indictment.