John Paul WILLIAMS, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. A–16326.

Court of Criminal Appeals of Oklahoma.

Sept. 27, 1972.

David Cook, Oklahoma City, for appellant.

Larry Derryberry, Atty. Gen., Sondra Leah Fogley, Asst. Atty. Gen., for appellee.

BRETT, Judge:

Appellant, John Paul Williams, hereinafter referred to as defendant, was convicted in the District Court of Oklahoma County, Case No. CRF–70–1331, of possession of marihuana with punishment fixed at six months imprisonment, and a fine of $1,000.00. Judgment and sentence was imposed on September 21, 1970, and this appeal perfected therefrom.

It was charged by information that the defendant on May 26, 1970, was in possession of marihuana (hashish) found in his pocket. On appeal defendant contends that the trial court erred in overruling his motion to suppress the evidence for the reason that the search of his person was unlawful which renders the evidence obtained thereby inadmissible. The trial court ruled that defendant was searched incident to arrest; and that both the arrest and search were lawful.

The evidence established that on May 23, 1970, a package was received at the Oklahoma City Airport Railway Express Agency office via air express. The package, about the size of a shoe box wrapped in brown paper and secured with packing tape, was addressed to Grace Slick with the notation, "hold airport," and had the shipping number 576436. M. A. Peterson, an R.E.A. employee at the airport, testified that the package "was about half broke open so I examined it." Peterson said the package "had some powder falling out of it and I didn't know what it was." Peterson then telephoned the Federal Narcotic Bureau on May 25, and told them, "I had a package they might be interested in." The Federal Bureau notified the Oklahoma Bureau of Investigation about the package. Officers Sparks and Ryan, agents in the Oklahoma Bureau of Investigation, telephoned Mr. Peterson and then went to the R.E.A. office to investigate the package on May 26 at about 8:30 a. m. Officer Sparks testified that the package "was sealed up. I couldn't see anything inside it." Peterson then "opened the package to show us what was in it." Officer Sparks then "asked Mr. Peterson to get us a small sample out of the package so we could have it analyzed." Peterson gave the officers a sample and then resealed the package. The sample was sent to the Bureau lab which reported about 10:00 a. m. that the sample was LSD.

Officers Sparks and Ryan remained at the R.E.A. office keeping the package under surveillance. At about noon, Linda Kosoff, after having earlier inquired by telephone, arrived at the R.E.A. office and claimed the package signing the receipt "Grace Slick by Linda Kosoff." Miss Kosoff left the office with the package in an

automobile with two male companions, one being the defendant Williams. The officers followed the car for several miles until it reached the corner of Northwest 30th and Lee, in Oklahoma City, where they arrested the occupants while the car was stopped at a stop sign. Officer Sparks testified he arrested the three for possession of LSD because "we knew the LSD was in the car." The officers found the still sealed package on the floor of the car. After removing Williams from the car, Officer Sparks testified that as he searched Williams' person he "felt a lump in his shirt pocket and I pulled it out to see what it was." The lump, about the size of a ping-pong ball, was a plastic sandwich baggie containing a black powder identified as "hashish," a form of marihuana. It is this marihuana alone which forms the incriminating evidence against defendant Williams in this prosecution.

Defendant contends that the search at the airport disclosing the LSD in the package was unlawful which renders the arrest for possession of LSD unlawful. Thus, defendant argues the search disclosing the marihuana was not incident to a valid arrest.

There was no search warrant or arrest warrant at any stage in the facts of this case. "When the right of privacy must reasonably yield to the right of search is, as a rule, to be decided by a judicial officer, not by a policeman or Government enforcement agent." Johnson v. United States, 333 U.S. 10, at 14, 68 S.Ct. 367, 369, 92 L.Ed. 436 (1947). Searches without a warrant are per se unlawful unless falling within one of the specific and well-delineated exceptions. State v. Harwood, 94 Idaho 615, 495 P.2d 160 (1972). One such exception is search incident to arrest. But for a search incident to arrest to be lawful, the arrest itself must be lawful. That is, the arrest must be made upon probable cause to believe that the person arrested has committed a crime. Beck v. Ohio, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964). If there is no probable cause, then the arrest is unlawful. If the arrest is unlawful, then a search cannot be lawful as incident to arrest. Thus the legality of the search of defendant's person and seizure of marihuana from his pocket turns upon whether there was probable cause for his arrest for possession of LSD.

According to the officers, defendant was arrested for possession of LSD because they "knew the LSD was in the car." This knowledge was gained from the warrantless search of the package at the airport and seizure of the sample by the R.E.A. employee at the request of the officers. When the officers arrived at the R.E.A. office the package was sealed, and then opened by the R.E.A. employee so the officers could see it. The package was opened in the presence of the officers for their benefit. The officers asked for and received a sample. Such a search and seizure without a warrant is per se unlawful unless there is some exceptioned circumstances justifying such an invasion. None exists here. There was no explanation why a warrant was not sought, and it is apparent there was sufficient time to secure a warrant. It is uncontested that the package was entitled to Fourth Amendment protection from unreasonable search, since what a person "seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected." Katz v. United States, 389 U.S. 347, at 351–352, 88 S.Ct. 507, at 511, 19 L.Ed.2d 576 (1967).

The State urges that the search of the package and seizure of the sample was by a private person, not a police officer, and thus it was not an unlawful seizure prohibited by the Fourth Amendment. It is true that an invasion of privacy by a private person is quite different from such an invasion by a police officer, and that the results of such an invasion by a private person might be competent evidence while the results of such an invasion by an officer would be incompetent evidence. Reed v. State, 50 Okl.Cr. 287, 297 P. 327 (1931).

Burdeau v. McDowell, 256 U.S. 465, 41 S. Ct. 574, 65 L.Ed. 1048 (1921).

However, the Fourth Amendment cannot be evaded by the use of a private person to do what an officer cannot do. Evidence obtained by a private person is nevertheless incompetent where the officers, through suggestion, order, or request, made the private person their agent for purposes of criminal investigation, or where the officers participate in the search and seizure. Byars v. United States, 273 U.S. 28, 33, 47 S.Ct. 248, 71 L.Ed. 520 (1927). Stapleton v. Superior Court of Los Angeles County, 70 Cal.2d 97, 73 Cal.Rptr. 575, 447 P.2d 967 (1969). Thacker v. Commonwealth, 310 Ky. 702, 221 S.W.2d 682 (1949). People v. Fierro, 236 Cal.App.2d 344, 46 Cal.Rptr. 132 (1965). See Annotation: Private Search–Evidence, 36 A.L.R.3d 553, § 9.

In State v. Scrotsky, 39 N.J. 410, 189 A. 2d 23 (1963), stolen articles reclaimed from defendant's apartment by his landlady, who had summoned the police, were held incompetent evidence where a police officer participated in the landlady's search of defendant's apartment. The court found that the landlady, Mrs. Seymore, was a "participant in a police action" and that "the search and seizure resulted from unlawful concert of action on the part of Mrs. Seymore and the police officers. * * * Mrs. Seymore simply acted as an arm of the police in reducing the articles to possession." 189 A.2d at 26. The evidence was likewise incompetent where the landlady entered defendant's apartment through an open door, and seized articles while an officer remained outside in the hall. Moody v. United States, 163 A.2d 337 (D.C.Mun.App.1960).

In Corngold v. United States, 367 F.2d 1 (9th Cir. 1966), a defendant, under investigation for smuggling watches, delivered several packages to an airport for shipment by Trans World Airlines. Federal customs officers asked a TWA employee if he had authority to open a package. The employee opened one of defendant's packages enabling the officers to observe contraband and mark it for identification. The court held the "search was in substance a federal search, cast in the form of a carrier inspection to enable the officers to avoid the requirements of the Fourth Amendment." Furthermore, the Court stated:

"But the evidence would be excludable in the present case even if the TWA employee had not acted solely to satisfy the government's interest in viewing the contents of the package, but instead had initiated and participated in the search for reasons contemplated by the inspection clause in TWA's tariff. The customs agents joined actively in the search. They held open the flaps of the large package; removed, opened, and inspected the contents of the small boxes which it contained; and marked the small boxes for future identification. Thus, at the very least, the search of appellant's package was a joint operation of the customs agents and the TWA employee. When a federal agent participates in such a joint endeavor, 'the effect is the same as though he had engaged in the undertaking as one exclusively his own.' * * *" 367 F.2d at 5–6.

In People v. McGrew, 1 Cal.3d 404, 82 Cal.Rptr. 473, 462 P.2d 1 (1969), the defendant, McGrew, delivered a locked footlocker for shipment to the United Airlines freight service at the San Diego airport. After defendant McGrew left, the airline employee, Dowling, told by the airline to be on alert for suspicious people with footlockers that might contain marihuana, opened the footlocker and saw several "bricks" or small packages wrapped in brown paper. The airline employee then closed the footlocker and called the police. Upon arrival of the police, Dowling again opened the footlocker and showed it to the officers. Some of the contents were removed and determined to be marihuana. Alerted by the United Airline employee, a Western Airline employee at the airport notified the same officers that McGrew had left another footlocker with him for shipment. Upon the arrival of the offi-

cers, a Western Airline employee opened up the second footlocker and the officers removed some of its contents determined to be marihuana. Upon finding McGrew in the airport, these officers arrested him and a baggage claim ticket was seized from his person. With this ticket McGrew's suitcase was then secured from the airline, opened, and marihuana seized therefrom.

The Court concluded that the search of the two footlockers, without a warrant, was unlawful and the evidence obtained therefrom, inadmissible. The Court found "it unnecessary to determine whether Dowling, the United Airlines employee, must be considered an agent of the police in opening the footlockers because, even assuming that he was not, the subsequent searches by law enforcement officers or at their express and specific direction . . ., were unlawful . . . ." 82 Cal.Rptr. at 476, 462 P.2d at 4. In so holding the Court observed that the footlockers delivered to the airline for shipment were effects entitled to the Fourth Amendment protection; that the contraband in the footlockers was not in open view; that the footlockers had not been abandoned; that the airline did not have implied consent to search the footlockers for contraband; and that the police had no basis to believe the airline had joint control over the footlockers which would give it authority to allow a police search. Finding that the search of the footlockers was unlawful, the Court held "the information obtained by the officers apart from their unlawful search did not furnish probable cause to arrest McGrew for possession of marijuana and that arrest was unlawful. The search of the suitcase may not be sustained as incident to a valid arrest, and the evidence secured by that search was properly suppressed." 82 Cal.Rptr. at 479, 462 P.2d at 7. This decision is particularly instructive to the case now before us since it expressly held that evidence obtained from an unlawful search by an airline *employee and police* did not furnish probable cause to arrest the defendant, and thus the evidence obtained from a search of his person was not incident to a valid arrest and was therefore inadmissible.

We, therefore, conclude in the instant case that the warrantless search and seizure of the sample from the package at the airport was unlawful. Where an unreasonable search has been conducted, the knowledge derived from such search cannot subsequently be used as a basis for furnishing probable cause for an arrest. Johnson v. United States, supra. Alderman v. United States, 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969). Where the basis for an arrest was derived unlawfully in violation of the Constitution, such an arrest is unlawful as being without probable cause. Whiteley v. Warden, 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971).

Accordingly, we find that defendant's arrest was invalid and therefore the search of his person cannot be sustained as being incident to a valid arrest. Evidence obtained by an unlawful search is inadmissible. Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). The trial court erred in denying defendant's motion to suppress and the judgment and sentence must therefore be reversed and remanded with instructions to dismiss.

Reversed and remanded.

BUSSEY, P. J., not participating.

SIMMS, J., concurs in result.