**Rocco HAWKINS, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 13077.**

District of Columbia Court of Appeals.

Submitted June 27, 1979.

Decided Feb. 21, 1980.

Charles D. Craig, Jr., Washington, D.C., appointed by the court, was on brief for appellant.

Earl J. Silbert, U. S. Atty., when the brief was filed, Washington, D.C., and John A. Terry, Michael W. Farrell, Judith Hetherton and Michael Lehr, Asst. U. S. Attys., Washington, D.C., were on brief for appellee.

Before KELLY, KERN and HARRIS, Associate Judges.

HARRIS, Associate Judge:

Appellant was convicted of second-degree burglary, D.C. Code 1973, § 22–1801(b), and petit larceny, *id.*, § 22–2202. He contends that the trial court committed reversible error by admitting into evidence certain police photographs which were taken of the stolen goods inside his apartment. We affirm.

### I

Thomas Washington left his apartment one night. He accompanied his neighbor—appellant—and appellant's girlfriend (who apparently was ill) to a hospital. After the woman had been admitted to the hospital, appellant told Washington he was leaving, but said that he would return shortly to pick him up. Appellant never came back. Washington stayed at the hospital all night, returning home in the morning.

When he arrived there, he discovered that his apartment had been burglarized. He found in his apartment a package of cigarettes and an empty wine bottle which had not been there when he left for the hospital. Washington immediately telephoned his sister, Betty Ford, and explained what had happened.[1] She told him to contact the resident manager as well as the police, and said that she would come right over. When Ford arrived, the police and the resident manager and his wife (the Carters) were already in Washington's apartment. Washington described to the police what was missing. He also said that he believed appellant had been the burglar, because the cigarette package which had been left in the room was opened from the bottom in the manner regularly utilized by appellant. The resident manager and his wife further cast suspicion upon appellant by informing the police that a man fitting appellant's description had been seen putting a stereo into a car earlier that morning in front of the building.[2]

Based on this information, the police initiated steps to obtain a search warrant for appellant's apartment, which was immediately upstairs from Washington's. The resident manager told the police that he had a passkey and could let the officers into appellant's room. The police refused the offer, stating that they had to await a warrant. Further, the officers specifically instructed the Carters that they should not enter appellant's apartment.

That advice went unheeded. While the officers were processing the victim's apartment, Ford, Carter, and Washington went upstairs and entered appellant's room. There they discovered almost all of the items (except the stereo and a few other things) which had been taken from Washington. They then called downstairs to the officers, stating that they had found the stolen goods. The officers then went up to

---

1. Mrs. Ford helps to look after Mr. Washington, who is somewhat retarded. For exam-

ple, she had purchased all of the items which were stolen from Washington's apartment.

2. A stereo was among the items stolen.

appellant's apartment.[3] The police verified that Washington's property was there, photographed the room, and allowed Washington to reclaim his belongings.

## II

Appellant's sole contention is that the officers violated his Fourth Amendment rights by entering and photographing his apartment after Ford, Carter, and Washington had discovered the stolen items there. Thus, appellant maintains, it was reversible error to admit into evidence the photographs taken of his room.

In support of this contention, appellant relies heavily on *Moody v. United States*, D.C.Mun.App., 163 A.2d 337 (1960). In *Moody*, this court held that when a police officer stood by passively while a private citizen searched another's apartment for stolen goods and then handed those goods over to the officer, the officer had participated in the search sufficiently to trigger the Fourth Amendment's protections. Even assuming arguendo that *Moody* would apply to this case—despite the fact that here the police not only did not sanction the citizens' search, but indeed counseled against it—we still could not conclude that the introduction of the photographs constituted reversible error.

■ There can be no question but that the private citizens' entry into appellant's apartment and their expected discovery of the stolen goods did not implicate the Fourth Amendment. Whether the officers' subsequent photography of the interior of the room contravened appellant's rights presents an interesting series of legal questions which, despite our concurring col-

league's desire to do so, we see no need to treat. We are satisfied that, taken in conjunction with the other overwhelming and essentially uncontroverted evidence against appellant, the photographs had no prejudicial effect on appellant's case.

■ At trial, both Mrs. Ford and Mr. Washington testified in detail concerning what was taken from Washington's apartment—including descriptions of clothes, sheets, appliances, toiletries, food, and phonograph records—and which of those items they found later in appellant's apartment. Once that testimony had been elicited, the government showed them the pictures of appellant's apartment and asked if they recognized any of the items in the pictures, whereupon the witnesses said they did and then virtually reiterated their preceding testimony. In addition to this evidence, the government also established that appellant's fingerprints were found on the wine bottle which had been left in Washington's room; that appellant regularly opened his cigarette packages in the same unusual manner as had been the one found in the apartment; that a man fitting appellant's description was seen loading a stereo into a car outside Washington's apartment house shortly before the burglary was discovered; that appellant never returned to the rooming house after the burglary and sent a friend to retrieve his possessions; and, finally, that when confronted by the police after the burglary, appellant attempted to flee and gave them a false identification.

Juxtaposed against this, appellant—who was impeached by two prior convictions—offered only an inherently incredible story concerning his activities on the night of the

---

3. There is no question but that the private citizens first entered appellant's apartment while the police were downstairs. There is a lack of clarity in the record as to whether the door to appellant's apartment became closed again at some point while the police were being summoned, but we are obliged to view the evidence in the light most favorable to the government. An officer testified that the door was open when he arrived at appellant's apartment.

The trial judge, after conducting the suppression hearing, correctly cited *Burdeau v. McDow-*

*ell*, 256 U.S. 465, 41 S.Ct. 574, 65 L.Ed. 1048 (1921), for the proposition that the Fourth Amendment's proscription against unreasonable searches and seizures has no applicability to the actions of private individuals. He then concluded:

[T]he Court has to rule that the motion must fail . . . because there is no testimony before this Court to sustain the fact that the officer searched and made a seizure of this room.

burglary, and never denied or explained the presence of Washington's property in his apartment.

In view of the strong and abundant evidence implicating appellant, and the minor role of the photographs, we conclude that the admission of the pictures into evidence, if error at all, was harmless beyond a reasonable doubt. *See Chapman v. California*, 386 U.S. 18, 21–24, 87 S.Ct. 824, 826–828, 17 L.Ed.2d 705 (1967); *Brooks v. United States*, D.C.App., 367 A.2d 1297, 1309–11 (1976).

*Affirmed.*

KERN, Associate Judge, concurring:

The record persuades me to reach two conclusions: (1) that the trial court committed constitutional error in refusing to suppress as evidence photographs the police took depicting various items in appellant's apartment which they had entered without his consent, but (2) that such error under all the circumstances was harmless beyond a reasonable doubt. *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

The trial court denied appellant's pretrial motion to suppress the photographs of the interior of appellant's apartment on the ground that there was no testimony at the suppression hearing that the police ever had made a search and seizure. However, the record reflects that the officers entered appellant's apartment when he was not present and without obtaining consent from anyone authorized to act on his behalf and proceeded to photograph its interior. At trial, the prosecutor moved the photographs into evidence; he also used them in his examination of the two key government witnesses to buttress their testimony that they had entered appellant's apartment and discovered various items of personal property belonging to the complainant which had

been recently taken from his apartment in the same building.

At the time police entered appellant's apartment and commenced photographing its interior appellant was not there, so their entry and subsequent photography could not be justified on grounds of being incidental to arrest or justified by exigent circumstances. Nor was their entry into the apartment and discovery of the articles "inadvertent" so as to trigger the so-called plain view exception to the warrant requirement for a search and seizure.[1] Finally, I am not persuaded that we can avoid the problem posed by asserting the acts of entering and photographing did not amount to a search and seizure. In *United States v. Boswell*, D.C.App., 347 A.2d 270, 273 (1975), we concluded that when the police removed a blanket covering an object which turned out to be a television set and then wrote down its serial number, this constituted a search and seizure. Similarly, it seems to me, when the police unlawfully enter an apartment and then record with a camera its contents they have engaged in a search and seizure.

Nevertheless, when all the circumstances of the case are considered in determining the harmless *vel non* of the constitutional error under the three-part test contained in *Brooks v. United States*, D.C.App., 367 A.2d 1297, 1305 (1976), I am satisfied the judgment of conviction should be upheld.

First, the untainted proof of appellant's criminal conduct is so overwhelming that it seems to me the verdict of guilty must have been reached even had the illegally seized evidence, *i. e.*, the photographs, not been presented at trial. Thus, the witnesses, Mrs. Ford and Mr. Washington, testified that they found most of the stolen items in appellant's apartment. The government further established that appellant's finger-

---

1. The extensive discussion in the briefs concerning the role of private citizens in first entering appellant's apartment and discovering the property of complainant seems beside the point since the record makes clear that the police also entered his apartment without a warrant and photographed its interior. While *Burdeau v. McDowell*, 256 U.S. 465, 41 S.Ct. 574, 65 L.Ed. 1048 (1921), teaches that the Fourth Amendment does not apply to searches and seizures by private citizens, the record makes perfectly clear that the police entered the apartment to take photographs and their photographs were used against appellant.

prints were found on the wine bottle which had been left in Washington's room; that appellant opened his cigarette packs in the same unusual manner as had been the pack found in the burglarized apartment; that a man was seen loading a stereo into a car outside of Washington's apartment house after the burglary at the same time and place appellant admitted he had been loading goods into a car; that appellant, after the burglary, never returned to the building and had sent a friend to retrieve his own possessions; and finally, that when confronted by the police subsequent to the burglary, appellant attempted to flee and then gave them false identification. In sum, the jury could have found independently of the illegally-obtained photographs that appellant was responsible for the theft from complainant of those items depicted in his own apartment by the photos.

Second, in applying the *Brooks* test, while the tainted evidence, being physical evidence, may be deemed to have had a greater impact on the jurors than would illegally-obtained testimonial evidence, for example, there are no indicia of record that the verdict rendered was a close or compromise verdict. Given all the other evidence, the photographs did not place undue emphasis on the contents of appellant's apartment in establishing his responsibility for the crime.

Finally, in considering the third criteria of *Brooks* in determining whether or not the constitutional error was harmless beyond a reasonable doubt, there is nothing in the record to indicate that the defense was in any way impaired by the admission of the photographs. While it might be argued they were instrumental in securing an admission from appellant, when he took the stand, that some of the items shown by the photos to be in his room were not his own, thereby arguably weakening his version of what happened,[2] the testimony of the other government witnesses all presented to the jury evidence that he had possessed personal property recently stolen from complainant and placed upon him the burden of explaining away their discovery.

Since I reach the same result as the majority, but by a different route, I agree the conviction should be affirmed.

2. The defense theory was that another person who concededly had been left alone in the apartment of the complaining witness on the critical night was responsible for the theft.