No. 47,961

State of Kansas, *Appellee*, v. Raymond Lee Hruska, *Appellant*.

(547 P. 2d 732)

Opinion filed March 6, 1976.

*Philip R. Herzig*, of Salina, argued the cause, and was on the brief for the appellant.

*James L. Sweet*, county attorney, argued the cause, and *Curt T. Schneider*, attorney general, was with him on the brief for the appellee.

The opinion of the court was delivered by

Prager, J.: This is a direct appeal in two criminal cases in which the defendant-appellant, Raymond Lee Hruska, was convicted of theft of telecommunication services (K. S. A. 1973 Supp. 21-3745) and possession of marijuana (K. S. A. 65-4127b [3]). The facts in the case were virtually undisputed and are as follows: The defendant Hruska is a resident of Saline county. On June 3, 1974, a search

warrant was issued for a search of the residence of the defendant by the judge of the magistrate court. The probable cause forming the basis for the search warrant was information obtained by the Southwestern Bell Telephone Company as the result of monitoring the defendant's telephone. This monitoring (wiretapping in defendant's terms) by the telephone company produced evidence which indicated that the defendant Hruska was using a device commonly known as a "blue box" to defraud the company out of collecting long distance tolls. More specific details as to the information obtained and the procedure followed will be discussed later in the opinion. After the information was obtained by the telephone company, the Salina police department was notified. Representatives of the telephone company accompanied by the police department presented the evidence to the county attorney. On the basis of the evidence the county attorney obtained the search warrant mentioned above. A search of the defendant's residence disclosed two "blue boxes" and a quantity of marijuana. At the beginning of the search defendant requested permission from the police officers to call his attorney. This request was granted. The defendant's attorney, Mr. William Mize, went to defendant's home and was present during the remainder of the search. The evidence is undisputed that the defendant was given a *Miranda* warning by the officers and that his attorney was present at the time he gave a statement to the authorities. Defendant admitted that the blue boxes and the marijuana were his. The defendant was then arrested and taken to the police department. There in the presence of his attorney he gave additional information. Prior to the trial the defendant filed a motion to suppress all the evidence which was the fruit of the search of June 3, 1974, a motion to suppress the incriminating statements made at his home and later at the police department, and a motion to dismiss the information. A pretrial hearing was held on all of these motions which were overruled. The case then proceeded to trial. Following conviction the defendant appealed to this court claiming trial errors.

The defendant's first point on this appeal is that the district court erred in denying his motion to suppress the evidence obtained in the search of his home on the grounds that the search was illegal because the evidence which formed the basis for the search warrant was obtained by an illegal wiretap. He does not argue that the evidence set forth in the affidavit for the search warrant was insufficient to establish probable cause. He does maintain, however,

that the evidence set forth in the affidavit to establish probable cause was illegally obtained by the telephone company.

The testimony presented at the pretrial hearing on the defendant's motion to suppress was essentially as follows: James F. T. Garner is the Kansas security manager for Southwestern Bell Telephone Company. On April 13, 1973, he was advised by the Kansas Bureau of Investigation that the defendant Hruska was building "blue boxes", electronic devices which when attached to a telephone circumvent the telephone company's normal billing procedure. Garner was unable to obtain any further information at that time and closed his file. On May 5, 1974, Garner received a telephone call from the security representative of the Mountain State Telephone Company in Salt Lake City advising him that a blue box inspection had revealed that Hruska's telephone number was the terminating number of several blue box calls. Garner testified that the significance of the calls was that they were made to a non-existent number and lasted for long periods of time. This meant to him that an illegal electronic device was being used on the defendant's telephone. Garner discussed the matter with Joe Binns, the district plant manager in Salina, and requested Binns to install a monitoring device on defendant's telephone in such a way that Binns and no one else could monitor the tones emitted from the defendant's telephone. The purpose of the device was to enable Binns to monitor Hruska's telephone to develop the facts concerning an electronic device being used on this particular phone. Binns was specifically instructed not to record actual conversations. Binns installed the monitoring device on Friday, May 31, 1974. Binns observed non-routine tones being emitted from the defendant's phone which were similar to tones emitted from blue boxes which he had observed. Garner and Binns concluded that a blue box was attached to the defendant's telephone. On Monday, June 3, 1974, Joe Horvat, another security representative of the telephone company monitored the defendant's telephone. At about 3 o'clock on that afternoon Mr. Horvat reported to Garner that he heard additional suspicious tones being emitted from Hruska's telephone. At this time Garner concluded that it was time to advise the law enforcement authorities. At approximately 3:40 p. m. on June 3, Garner and Detective Gary Hindman went to the telephone office. Horvat showed Hindman how the monitoring device was turned on and off and, while Hindman was there, a call was placed on the defendant's line and the suspicious dial tones were again ob-

served. The testimony varied as to how long Detective Hindman actually was in the telephone company office. It was between ten and forty minutes. On that same afternoon Hindman and Garner went to the Saline county attorney, David S. Knudson, and presented the facts to him which indicated the existence of an illegal electronic device. The county attorney prepared an affidavit for a search warrant which was presented to the magistrate judge. He issued the search warrant for the defendant's residence.

At approximately 5:30 p. m. on June 3, 1974, the county attorney, Knudson, along with police officers and two security agents of the telephone company, went to the defendant's residence armed with a search warrant. Detective Hindman knocked on the door. It was answered by Mrs. Hruska. She summoned the defendant. Hindman identified himself as a police officer, advised the defendant that he had a search warrant for the Hruska residence in regard to electronic devices used to defraud the telephone company, and served a copy of the search warrant on the defendant. Hindman then gave the defendant a *Miranda* warning. Defendant, with the permission of Hindman, called his attorney, William Mize. Mr. Mize arrived at the Hruska home ten or fifteen minutes after the search began and was present for the remainder of the search. With Mr. Mize present the defendant was questioned at his residence concerning two blue boxes and a small quantity of marijuana found in the search of the home. The defendant admitted that the blue boxes and the marijuana were his. Suffice it to say, the defendant Hruska was caught red handed in possession of two illegal electronic devices and a quantity of marijuana. It was obvious to the defendant and his attorney that unless the evidence obtained in the search could be suppressed, there was no defense to the action.

The defendant contends that the search of defendant's residence violated his constitutional rights because the evidentiary basis for for the issuance of the search warrant was evidence illegally obtained by the telephone company from monitoring the defendant's telephone. The basic issue presented is whether or not a telephone company has the right to monitor the calls of one of its subscribers without first obtaining an order from a judicial officer authorizing eavesdropping as provided in K. S. A. 1973 Supp. 22-2513. The question raised is one of first impression under the Kansas statutes. To determine the matter we must consider together several Kansas statutes. K. S. A. 1973 Supp. 21-4001 defines the crime of eavesdropping and provides as follows:

"21-4001. Eavesdropping. (1) Eavesdropping is knowingly and without lawful authority:

"(a) Entering into a private place with intent to listen surreptitiously to private conversations or to observe the personal conduct of any other person or persons therein; or

"(b) Installing or using outside a private place any device for hearing, recording, amplifying, or broadcasting sounds originating in such place, which sounds would not ordinarily be audible or comprehensible outside, without the consent of the person or persons entitled to privacy therein; or

"(c) Installing or using any device or equipment for the interception of any telephone, telegraph or other wire communication without the consent of the person in possession or control of the facilities for such wire communication.

"(2) A 'private place' within the meaning of this section is a place where one may reasonably expect to be safe from uninvited intrusion or surveillance, but does not include a place to which the public has lawful access.

"(3) It shall not be unlawful for an operator of a switchboard, or any officer, employee, or agent of any public utility providing telephone communications service, whose facilities are used in the transmission of a communication, to intercept, disclose, or use that communication in the normal course of his employment while engaged in any activity which is incident to the rendition of public utility service or to the protection of the rights of property of such public utility.

"(4) Eavesdropping is a class A misdemeanor."

K. S. A. 1973 Supp. 21-4002 defines the crime of breach of privacy and provides as follows:

"21-4002. Breach of privacy. (1) Breach of privacy is knowingly and without lawful authority:

"(a) Intercepting, without the consent of the sender or receiver, a message by telephone, telegraph, letter or other means of private communication; or

"(b) Divulging, without the consent of the sender or receiver, the existence or contents of such message if such person knows that the message was illegally intercepted, or if he illegally learned of the message in the course of employment with an agency in transmitting it.

"(2) Subsection (1) (a) of this section shall not apply to messages overheard through a regularly installed instrument on a telephone party line or on an extension.

"(3) Breach of privacy is a class A misdemeanor."

At the time the telephone company monitored defendant's telephone, K. S. A. 1973 Supp. 22-2513 authorized wiretapping by judicial order on application of the attorney general, an assistant attorney general, or a county attorney. K. S. A. 1973 Supp. 22-2513 was repealed in 1974 and was replaced by a more extensive statutory wiretapping procedure. (K. S. A. 22-2514 through 22-2519 [Weeks 1974].) The amendment of the statute and change of procedure are not material in this case and will not be discussed. It is the position of the defendant that the conduct of the telephone company

in monitoring his telephone without obtaining a judicial order under 22-2513 constituted a breach of privacy under the provisions of K. S. A. 1973 Supp. 21-4002 and eavesdropping under the provisions of K. S. A. 1973 Supp. 21-4001. Hence, he maintains that the information pertaining to the use of fraudulent electronic devices on his telephone was illegally obtained and was, therefore, inadmissible.

In overruling the defendant's motion to suppress this evidence, the trial court relied primarily upon the provisions of 21-4001 (3) which is quoted in full above. The trial court reasoned that under the express language of the statute it is not unlawful for a telephone company to intercept and disclose communications while the telephone company is engaged in any activity which is incident to the protection of its rights of property. In our judgment the district court was correct in its construction of the Kansas statutes. The same result has been reached by the federal courts in the interpretation of similar federal statutes. 18 U. S. C. A. 2511 (2) (a), the federal counterpart of K. S. A. 21-4001 (3), provides:

"§ 2511. Interception and disclosure of wire or oral communications prohibited

"(2) (a) (i) It shall not be unlawful under this chapter for an operator of a switchboard, or an officer, employee, or agent of any communication common carrier, whose facilities are used in the transmission of a wire communication, to intercept, disclose, or use that communication in the normal course of his employment while engaged in any activity which is a necessary incident to the rendition of his service or to the protection of the rights or property of the carrier of such communication: *Provided*, That said communication common carriers shall not utilize service observing or random monitoring except for mechanical or service quality control checks.

"(ii) It shall not be unlawful under this chapter for an officer, employee, or agent of any communication common carrier to provide information, facilities, or technical assistance to an investigative or law enforcement officer who, pursuant to this chapter, is authorized to intercept a wire or oral communication."

K. S. A. 1973 Supp. 21-4002 has its counterpart in 47 U. S. C. A. 605 which in substance prohibits a person receiving or transmitting any interstate communication by wire to divulge or publish the existence, contents, substance, purport, effect, or meaning thereof, except through authorized channels of transmission or reception, to any person other than the addressee, his agent, or attorney, or to a person employed or authorized or in response to a subpoena issued by a court of competent jurisdiction or on demand of other lawful authority. The federal statutes have been before the federal courts on a number of occasions for interpretation. The federal courts

without exception have held that it is not unlawful for a telephone company to monitor telephone calls of its customers if the company has reason to believe that the customer is using an electronic device to defraud the company out of long distant tolls. (*United States v. DeLeeuw*, 368 F. Supp. 426 [1974]; *United States v. Freeman*, 373 F. Supp. 50 [1974]; *United States v. Shah*, 371 F. Supp. 1170 [1974].)

The leading federal case in this area is *United States v. Clegg*, 509 F. 2d 605 (5th Cir. 1975). In *Clegg* a security agent for Southwestern Bell received information that the defendant might be using an electronic device to circumvent the company's billing procedure. The security agent attached a monitoring device to the defendant's telephone, which device was capable of detecting "blue box calls" and which recorded the time and place of all outgoing calls. This device was kept on the defendant's line for approximately four months. After determining that illegal calls were being made, the agent attached a monitor to identify the caller. The telephone company then notified the FBI of its investigation and results. Based upon that evidence a search warrant was obtained and "blue boxes" were seized at the defendant's home and office. The defendant moved to suppress the evidence obtained in the search contending that the monitoring of his telephone by the telephone company violated his constitutional rights against illegal searches and seizures under the Fourth Amendment to the United States Constitution. The defendant's argument was based upon the assumption that the telephone company's investigator was a *de facto* agent of the FBI or that the FBI had participated in every aspect of the company's investigation. The Court of Appeals held that where the government did not know that the company would intercept and record any portion of an oral conversation, government action was absent and there was no Fourth Amendment violation. It further held that it is only when the government has preknowledge of and acquiesces in a private party's conducting a search and seizure which the government itself under the circumstances could not have undertaken that the problem of compliance with Fourth Amendment standards arises from search by a private party. The fact that United States law enforcement authorities were informed that the investigation was underway and that it had uncovered evidence of criminal activity does not automatically change its private nature. The court emphasizes, however, that where a search by a private party is made with the preknowledge and ac-

quiescence of the government there must be compliance with Fourth Amendment standards and statutory procedures designed to control wiretaps by government officials.

In *Clegg* the monitoring device recorded the existence of calls and not the contents of them. This is the same situation which we have in the present case. In this regard the court noted:

". . . The Fourth Amendment, . . . protects only the content of a telephone conversation and not the fact that a call was placed or that a particular number was dialed. United States v. Baxter, 492 F. 2d 150, 167 (9th Cir. 1973). This is so because telephone subscribers have no reasonable expectation that records of their calls will not be made. It is, in fact, well known that such records are kept. United States v. Covello, 410 F. 2d 536, 542 (2d Cir. 1969). . . ." (p. 610.)

The court in *Clegg* then went on to consider any possible conflict between 18 U. S. C. A. 2511 (2) (a) and 47 U. S. C. A. 605. After considering the federal statutes together the court concluded that 18 U. S. C. A. 2511 (2) (a) at a minimum, authorizes a telephone company which has reasonable grounds to suspect that its billing procedures are being bypassed to monitor any phone from which it believes that illegal calls are being placed. If, by the use of a monitoring device, it discovers the existence of illegal calls, § 2511 (2) (a), again at a minimum, authorizes it to record, audibly, the salutations. Additionally, § 2511 (2) (a) allows a telephone company to divulge, at least, the existence of the illegal calls and the fact that they were completed (the salutations) to law enforcement authorities and ultimately to the courts, since such disclosures are a necessary incident to the protection of the company's property rights. As authorized disclosures, such evidence is admissible in court.

The defendant attempts to distinguish the federal cases from the present case on the theory that the federal wiretap statutes are more permissive than the Kansas statutes. We see no significant difference between 21-4001 and 21-4002 and their federal counterparts 18 U. S. C. A. 2511 (2) (a) and 47 U. S. C. A. 605. In this case as in *Clegg* the monitoring device was installed and the monitoring was done solely on the initiative of Southwestern Bell employees. The monitoring agent had instructions to listen only to dial tones and not to the contents of conversations. The telephone company had good reason to suspect fraud and in our judgment acted within the bounds of 21-4001 (3). The evidence was undisputed that the police authorities were not advised of the monitoring of the defendant's telephone by the telephone company until the afternoon

of June 3, 1974, shortly before Detective Hindman went to the office of the telephone company to observe the tones emitted by the monitoring device from the defendant's telephone. Following this observation Detective Hindman and Garner immediately went to the county attorney who prepared the necessary affidavit and a search warrant was obtained. Under the circumstances it cannot reasonably be contended that the state law enforcement officers had any preknowledge or that they acquiesced in the monitoring of the defendant's telephone by the telephone company. We have concluded that the affidavit which formed the basis for the search warrant contained lawfully obtained information and that the district court was correct in overruling the defendant's motion to suppress.

We hold that our statutes, K. S. A. 1973 Supp. 21-4001 and 21-4002, which generally prohibit the interception and disclosure of wire or oral communications without lawful authority, authorize a telephone company, which has reasonable grounds to suspect that its billing procedures are being bypassed by electronic devices, to monitor any phone from which it reasonably believes illegal calls are being placed. We further hold that if a telephone company by the lawful use of a monitoring device discovers the existence of illegal calls, it is authorized by those statutes to record, audibly, the salutations and to divulge to law enforcement authorities and ultimately to the courts the existence of illegal calls and the fact that they were completed. Since the monitoring of the defendant's telephone was not conducted with the preknowledge and acquiescence of government agents it was not necessary that an order authorizing eavesdropping be obtained from a judicial officer under the provisions of K. S. A. 1973 Supp. 22-2513.

The defendant's next point of claimed error is that the district court erred in overruling his motion to suppress certain incriminating statements made by the defendant in which the defendant admitted that he possessed the blue boxes and the marijuana. In support of this contention the defendant argues that such admissions and confessions were obtained in reliance by the defendant upon an agreement for leniency made between the county attorney and defendant's counsel, which the county attorney refused to honor. The record before us discloses that when Detective Gary Hindman armed with a search warrant arrived at the defendant's residence the first thing he did was to advise the defendant why they were there and of his constitutional right to counsel. Defendant requested

that he be allowed to call an attorney. Defendant's attorney, William Mize, arrived at defendant's residence while the search was in progress. The defendant was questioned while still at his residence with his attorney present. He made admissions concerning the possession of both the blue boxes and the marijuana. It is clear that no promises or threats were made at that time to induce the defendant to talk to the officers. Later at the police department statements were made by the county attorney that he would limit the charges to be filed if defendant would cooperate. These discussions were prompted by the fact that the county attorney, Knudson, felt that defendant Hruska had sold blue boxes to a number of people who were using them around the state. Defendant had in his possession at home component parts to make a dozen blue boxes. The county attorney testified on the motion to suppress that he advised defendant's attorney that if defendant would consider making a full disclosure regarding third persons who might be involved, he would consider not filing drug charges against him and would file only a single charge of theft of telecommunication services. It is clear that such conversations were had for the purpose of obtaining names of other persons who might have additional blue boxes, not for the purpose of gaining additional evidence against the defendant. The defendant refused to identify correctly a person in Utah who was connected with the blue boxes. We have concluded from the evidentiary record that the discussion between the county attorney and defendant's counsel as to what charges would be filed were made only after defendant had already made incriminating statements as to his possession of the blue boxes and the marijuana. Furthermore, there was evidence to support the conclusion that the defendant did not in fact cooperate with the law enforcement authorities or make a full disclosure so as to identify the third persons. The defendant's attorney was present at all times when his statements were made. The evidence does not require a finding that the admissions made were involuntary. Where the trial court conducts a hearing in the absence of a jury to determine the admissibility of defendant's statement, the determination that the statement was voluntarily made is entitled to the weight commonly accorded findings of trial courts and if supported by competent evidence will not be disturbed on appeal. (*State v. Jenkins,* 197 Kan. 651, 421 P. 2d 33.) Here the trial court found that the defendant's statements were freely and voluntarily made and there is competent evidence in the record to support that

finding. We find that the defendant's motion to suppress his statements was properly overruled by the district court.

The defendant next contends that K. S. A. 1973 Supp. 21-3745 is unconstitutional in that it violates Article 2, § 16, of the Kansas Constitution because (1) the subject matter of the bill is not clearly expressed in the title and (2) the bill encompasses more than one subject. Article 2, § 16 of the Kansas Constitution provides in pertinent part as follows:

"No bill shall contain more than one subject, which shall be clearly expressed in its title, . . ."

Defendant's first argument is premised on the faulty assumption that the title to the bill under which defendant was charged (21-3745) is "Theft of Telecommunication Services," the heading given the statute by the revisor of statutes. This heading is not the title of the original bill passed by the legislature. The original bill was House Bill No. 2088, contained in Chapter 119, Laws of 1972. The title of that bill was as follows:

"An act relating to the criminal code; making it a crime to make, possess or transfer any device for the theft of telecommunication service or publication of information regarding methods for such thefts."

This law was later amended in 1973 by Senate Bill No. 57, Chapter 139, Laws of 1973. The title of that bill reads as follows:

"An act relating to the criminal code; amending K. S. A. 1972 Supp. 21-3729 and 21-3745, and repealing the existing sections."

In our judgment the subject matter of these two bills was adequately expressed in the title. The purpose of the title is to call attention to the contents of the bill so members of the legislature and the general public may be fairly informed as to what the act implies. It is not necessary that the title be a synopsis or abstract of the details of the entire act. (*Brickell v. Board of Education,* 211 Kan. 905, 508 P. 2d 996.) We have concluded that the titles expressed in the two bills mentioned above clearly reflect the substance of K. S. A. 21-3745 and are sufficient to meet the requirements of Article 2, § 16, of the Kansas Constitution. We further reject the contention of the defendant that K. S. A. 21-3745 is unconstitutional because it embraces more than one subject. In our judgment the title to the bills enacted by the legislature clearly covered the making, possession, and transferring of devices for the theft of telecommunications. All of the subsections of 21-3745 have to do with telecommunications and further are related to the "theft" of telecommunications and include means and instrumentalities used for

the commission of the theft. Certainly the various subsections are not foreign to or distinct from the title of the bill nor could the legislature or public have been misled by the title to the bill. The defendant's motion to dismiss the information on the grounds that the title of the act was defective was properly overruled.

As his final point the defendant contends that the court erred by not giving his requested instruction on attempted theft of telecommunication services. Here the information charged that defendant did unlawfully and willfully make or possess an instrument or device used to conceal from the telephone company the extent or place of origin or destination of a telecommunication. The evidence was undisputed that the defendant possessed such an instrument or device. There was nothing in the evidence to justify an instruction on attempted theft. If the defendant was guilty of any crime he was guilty of possessing an illegal telecommunication device. An instruction on attempted theft would not have been appropriate under the undisputed evidence. The trial court did not err in refusing to give the defendant's requested instruction on attempted theft.

For the reasons set forth above the judgment of the district court is affirmed.