(596 P.2d 190)

No. 50,458

STATE OF KANSAS, *Appellant,* v. O. B. BOHANNON, JR., *Appellee.*

Opinion filed June 15, 1979.

*Robert J. Sandilos,* assistant district attorney, *Curt T. Schneider,* attorney general, and *Vern Miller,* district attorney, for appellant.

*Warren B. Wood,* of Wichita, for appellee.

Before FOTH, C.J., ABBOTT and PARKS, JJ.

ABBOTT, J.: This is an interlocutory appeal by the State, pursuant to K.S.A. 1978 Supp. 22-3603, from an order suppressing evidence.

The defendant, O. B. Bohannon, Jr., was charged with one count of burglary (K.S.A. 21-3715) and one count of theft (K.S.A. 21-3701[a]). The charges arose out of a burglary of the residence of Eddie Taylor in which a number of pieces of citizens band (CB) radio equipment were stolen. Taylor was of the opinion his equipment made a distinctive sound when transmitting, and a few days after the burglary he heard what sounded like his equipment on the air. Through conversation, he learned the "handle" (Gambling Dog) and address of the person operating the equipment. Subsequent investigation disclosed that "Gambling Dog" was the handle of the defendant, O. B. Bohannon, Jr.

Taylor, a former reserve police officer with the Wichita Police Department, contacted a Lt. Bullins of the department and requested that Bullins meet him at 17th and Hillside. When Bullins arrived, Taylor told him of his suspicions regarding the defendant. Bullins and Taylor agreed that they had insufficient evidence to obtain a search warrant and that if they merely went to the defendant's home, the odds were that they would not be allowed to enter and the CB equipment would be disposed of. The two men then went to the home of Taylor's son-in-law, Robert Emerson. Taylor asked Emerson, who was familiar with the equipment, to go to defendant's home and verify that it was Taylor's equipment. Bullins instructed Emerson that he would need to be able to positively identify at least a portion of the equipment. Bullins and Taylor returned to 17th and Hillside in the police vehicle. Emerson, traveling in his own vehicle, proceeded directly to the defendant's home. Emerson's first attempt to view the equipment was unsuccessful and he returned to 17th and Hillside. The three men soon heard the distinctive transmitter noise, whereupon Emerson returned to defendant's home and verified that Taylor's CB equipment was in fact there.

Based on the information Emerson gave Bullins, a search warrant was obtained and the stolen CB equipment was seized. The defendant was charged with one count of theft and one count of burglary. On July 28, 1978, defendant's motion to suppress the evidence seized under the warrant was heard. In support of his

motion to suppress, the defendant argued that Emerson was acting as an agent of the police. The State argued that Emerson's search was private and hence outside the perimeters of the warrant requirement and the exclusionary rule. The trial judge found that Emerson was acting as an agent for the Wichita Police Department when he went to the defendant's home to view the CB equipment and accordingly suppressed the evidence. The State then brought this interlocutory appeal pursuant to 22-3603.

At the outset we are met with three jurisdictional arguments by the defendant that this Court is without jurisdiction as a result of the State's failure to timely file its appeal or comply with Rule 4.02(a) (224 Kan. xxxix) (failure to timely file a certified copy of the notice of appeal with the clerk of the appellate courts).

The first problem is one which is of growing concern to this Court and which results in unnecessary complications in many cases. The problem arises first as a result of trial judges issuing letter decisions and memorandum decisions in K.S.A. 60-258 judgments that fail to state whether the letter or memorandum alone is to serve as the journal entry or whether counsel should prepare a journal entry. Secondly, as in this case, some orders which are appealable are not judgments as contemplated by K.S.A. 60-258, but are otherwise appealable as contemplated by Rule 4.02(b)1 (224 Kan. xxxix), and this problem arises because the court fails to state whether the order is to be journalized before it is deemed to have been formally "entered."

The decision to sustain the defendant's motion to suppress was announced to defense counsel via a one-sentence letter dated 29 August 1978 from the trial judge, stating simply, "Please be advised that the Motion to Suppress, in the above entitled matter, has been sustained." The State filed its notice of appeal in the Sedgwick District Court on September 11, 1978, more than ten days after the letter announcing the trial court's decision.

K.S.A. 1978 Supp. 22-3603 provides that notice of appeal be filed within ten days after entry of the order. A journal entry which was approved by counsel and signed by the court was officially filed on September 27, 1978. The journalized order contained additional findings of fact and a conclusion of law that had not been previously announced by the trial judge. We can only conclude from these facts, plus the fact that the trial court neither made an oral order in the record nor filed its letter

notifying counsel of its decision, and subsequently signed the journal entry of September 27, 1978, that it was the trial court's intention that the order not be entered as contemplated by 22-3603 until the journal entry was filed with the court.

The defendant next contends the State's notice of appeal was of no force and effect since it was prematurely filed. He reasons that the notice of appeal was filed *before* the entry of the order, whereas, as noted above, 22-3603 requires the notice of appeal to be taken within ten days *after* entry of the order from which the appeal is taken. Defendant relies on the line of cases typified by *Guerrero v. Capitol Federal Savings & Loan Ass'n,* 197 Kan. 18, 415 P.2d 257 (1966), all of which were decided prior to the adoption of Rule 2.03 covering premature appeals.

K.S.A. 1978 Supp. 22-3606 provides that unless otherwise provided by statute or rule of the Supreme Court, the statutes and rules governing procedure on appeals to an appellate court in civil cases shall apply to and govern appeals to an appellate court in criminal cases. Although Rule 2.03 speaks in terms of "judgments," when considered with Rule 4.02 (224 Kan. xxxix) and 22-3606 we are satisfied that it was intended to apply to appealable "orders" as well as judgments. The notice of appeal, although premature, was thus timely filed in this case. *Carson v. Eberth,* 3 Kan. App. 2d 183, 186-87, 592 P.2d 113 (1979).

The defendant also makes a jurisdictional challenge because of the State's failure to forward a certified copy of the notice of appeal to the clerk of the appellate courts within three days after the filing of the notice of appeal, as required by Rule 4.02. The journalized order, however, was filed with the district court on September 27, 1978, and a certified copy of the same was filed with the clerk of the appellate courts the very next day. As noted in *Carson,* 3 Kan. App. 2d at 186, a premature notice of appeal lies dormant until such time as the judgment (or, as in this case, the order) is entered, at which time under Rule 2.03 the notice of appeal has the same effect as if it had been filed simultaneously with the entry of the judgment or appealable order. The order having been entered on September 27, 1978, the premature notice of appeal is deemed to have been effectively filed on that date, and it follows that the filing of a certified copy of the order with the clerk of the appellate courts on the following day is timely and in full compliance with Rule 4.02.

Both parties agree that the acts of Emerson would have constituted an illegal search if he had been a police officer, leaving as the sole issue in this case whether or not there is substantial competent evidence to support the trial court's finding that Emerson was acting as an agent for the Wichita Police Department when he conducted his warrantless search. We wish to emphasize that there is no question before this Court concerning the legality of the search or whether the viewing of the CB equipment came within the plain view doctrine.

It has been repeatedly held that the conduct of a private person acting independently and not under the authority or direction of the State is not included in the proscriptions of the Fourth Amendment of the United States Constitution or section 15 of the Kansas Bill of Rights. *Burdeau v. McDowell,* 256 U.S. 465, 65 L.Ed. 1048, 41 S.Ct. 574, 13 A.L.R. 1159 (1921); *State v. Boswell,* 219 Kan. 788, 793, 549 P.2d 919 (1976); *State v. Gordon,* 219 Kan. 643, 648, 549 P.2d 886 (1976).

In order to be admissible, evidence obtained through a search by a private individual must come to the State upon a "silver platter" and not as a result of any instigation by state officials or participation by them in illegal activities. *Byars v. United States,* 273 U.S. 28, 71 L.Ed. 520, 47 S.Ct. 248 (1927). The extent of official involvement in the total enterprise is the crucial element, for if it is too great the private individual's role may be reduced to that of an agent. *Coolidge v. New Hampshire,* 403 U.S. 443, 29 L.Ed.2d 564, 91 S.Ct. 2022 (1971); *Raymond v. Superior Court,* 19 Cal. App. 3d 321, 96 Cal. Rptr. 678 (1971). Once an agency relationship is established, the full panoply of constitutional provisions and curative measures applies, and any evidence which the police could not legally seize or observe is also off limits to the agent. *People v. Esposito,* 37 N.Y.2d 156, 371 N.Y.S.2d 681, 332 N.E.2d 863 (1975).

Our Supreme Court has further held, in *State v. Hruska,* 219 Kan. 233, Syl. ¶ 3, 547 P.2d 732 (1976), that:

"It is only when government has preknowledge of and acquiesces in a private party's conducting a search and seizure which the government itself could not have undertaken that the problem of compliance with Fourth Amendment standards arises from search by a private party."

In *Hruska,* the Court held that evidence was admissible when the acts that were alleged to constitute impermissible conduct were

performed by private parties *prior* to any contact with law enforcement authorities.

Various courts have applied a number of tests in addition to the preknowledge or acquiescence test set forth in *Hruska*. For example, was the search made under the *authority* or *direction* of the police (*State v. Boswell,* 219 Kan. 788); was the private citizen actively *recruited* by the police to make the search (*State v. Boynton,* 58 Hawaii 530, 574 P.2d 1330 [1978]); was he *paid* by them (*Hajdu v. State,* 189 So.2d 230 [Fla. App. 1966]); did the police *instigate, influence,* or *arrange* for the individual to make the search (*Gundlach v. Janing,* 401 F. Supp. 1089 [D. Neb. 1975]; *United States v. Ellison,* 469 F.2d 413 [9th Cir. 1972]); did they *encourage* him or *participate* in the search themselves (*Gundlach v. Janing,* 536 F.2d 754 [8th Cir. 1976])? In *Raymond v. Superior Court,* 19 Cal. App. 3d 321, evidence was suppressed where the police *provided transportation* to the private individual, *chose* the time of day for the search, and *described* the amount of the item which needed to be seized (marijuana).

In *Moody v. United States,* 163 A.2d 337 (D.C. 1960), a Mr. Johnson told police that he had seen some of his previously stolen property in Mr. Moody's apartment. After Moody was arrested upon Johnson's complaint, Johnson and an officer went to Moody's apartment where the officer remained in the hall and Johnson made a warrantless entry and handed items he recognized as his to the officer. The court suppressed the evidence thus seized, holding that the Fourth Amendment may be violated just as effectively through the intervening agency of one not a policeman as by one who is, and that the policeman here could not be characterized as a willing but innocent beneficiary who stood silently by. *Moody,* 163 A.2d at 340.

In *State v. Becich,* 13 Or. App. 415, 420, 509 P.2d 1232 (1973), a Mr. Boley was under suspicion of theft. While claiming his innocence, he said that he knew where the stereo equipment was and would show his good faith by getting it back. The police drove him to the scene and observed him entering defendant Becich's house and removing some boxes. The court suppressed the evidence, noting that the officer's passive observation of a clearly illegal search and seizure constituted "sufficient official participation" to taint the items seized. *Becich,* 13 Or. App. at 420.

In *Stapleton v. Superior Court,* 70 Cal.2d 97, 73 Cal. Rptr. 575, 447 P.2d 967 (1968), Mr. Bradford, an agent for a credit card company, was working with the police in a credit card fraud investigation and accompanied them to the defendant's house for the purpose of arresting him. Bradford noticed the defendant's car parked down the street. Searching it of his own volition, he found evidence which was turned over to the police. The court ruled that it must be excluded in light of the policemen's perception of the illegal search, which consisted of their silently standing by and observing the search, although they did nothing to aid in it.

An example of a search leading to admissible evidence is found in *Gundlach v. Janing,* 401 F. Supp. at 1090, wherein the manager of an airplane parts store reported a suspected theft. The police requested that he "establish that there was property missing from his inventory" before filing a complaint. No mention was made that the manager should attempt to obtain evidence. The manager, however, did search the defendant's garage and found stolen property. The court held that the mere knowledge the private individual might conduct a search that would be illegal if made by law enforcement personnel, without any encouragement or instigation, was not enough to turn the private search into a governmental one.

The facts in the case before this Court fall between the two extremes of when the police had only an idea of what might occur and when they actually witnessed the illegal search and seizure taking place. We pause to note that where the trial court has made findings of fact, the function of this Court on appeal is to determine whether the findings are supported by substantial competent evidence, and in doing so all reasonable inferences are drawn in favor of the party who prevailed below. *City of Council Grove v. Ossmann,* 219 Kan. 120, 546 P.2d 1399 (1976).

The trial judge made factual findings of the extent of participation of the police, and we hold that there is substantial competent evidence to support those findings. Officer Bullins participated in obtaining a person to go to the defendant's home, an entity enjoying special protection by our constitutions, and there obtain evidence the officer did not think he could successfully obtain. We note that a police vehicle was used in the trip to recruit Emerson. Counsel for the State candidly admitted at oral argu-

ment that Bullins may have acted in a supervisory capacity, and he was clearly present during the entire planning stage. Bullins was also present when Emerson twice left to go to the defendant's home. He further participated when he explained to Emerson what the latter must observe in the home, and was standing by in the immediate neighborhood while the illegal search took place. While he did not instruct Emerson to take any illegal action, the record contains evidence from which the trial court could conclude that he must have been aware of the probability such activity would take place.

The record is such that the trial judge might have reached an opposite conclusion, but in our opinion it does contain substantial competent evidence to support the findings necessary to suppress the evidence under the issues presented to this Court.

Affirmed.