OPINION
Defendant-appellant, Alan R. Glavic, was convicted in the Lake County Court of Common Pleas on one count of breaking and entering, R.C. 2911.13, and one count of receiving stolen property, R.C. 2913.51. The trial judge sentenced Glavic to a one year term of imprisonment for each count and designated the sentences to be served consecutively. Glavic appeals, asserting the following assignments of error:
 "1. The trial court erred by failing to suppress the introduction into evidence of the stereo speakers.
 "2. The evidence was insufficient, as a matter of law, to convict appellant for Receiving Stolen Property.
 "3. The appellant's conviction for Breaking and Entering was not supported by sufficient evidence as a matter of law.
 "4. The appellant's convictions for Receiving Stolen Property and Breaking and Entering are against the manifest weight of the evidence.
 "5. The appellant is entitled to a new trial due to prosecutorial misconduct during closing argument."
We have rearranged the assignments for ease of discussion.
In his third assignment of error, Glavic asserts that the breaking and entering conviction is not supported by sufficient evidence.[1] We disagree.
At trial, Sergeant Earl Tate of the Lake County Sheriff's Department, testified that on November 12, 1995, he was on surveillance duty inside the impound yard of an establishment known as Sammet's Towing in the Painseville Township. The owner, Junior Sammet, had complained to the police that the cars stored in the impound lot had been frequently burglarized and vandalized. At 11:36 p.m., Sgt. Tate observed two men cut a hole in the perimeter fence and gain access to the yard. As he watched with special light amplification equipment, he saw the men brushing the snow off the windows of the cars and shining flashlights inside "to see if there was anything of value." He called for back-up and approached the men, ordering them to halt. They ran in different directions, and Sgt. Tate was unable to apprehend either one. He did not get a good look at them.
Lieutenant Jerry G. Hess also of the Lake County Sheriff's Department, testified that he responded to Sgt. Tate's call for back-up. When he arrived, he observed a cream-colored Oldsmobile driving slowly back and forth in front of the impound yard. At first Lt. Hess dismissed the driver as a "rubber-necker," or someone who paused to observe the police activity to find out what was going on. After the Oldsmobile made several passes, Lt. Hess suspected the driver might be looking for the two men whom Sgt. Tate had been chasing. He got into his marked patrol cruiser and effectuated a traffic stop. The driver, appellant Glavic, was hostile and uncooperative. When Lt. Hess asked to see his driver's license, Glavic responded with a stream of vulgarities. Lt. Hess arrested Glavic for disorderly conduct. Another officer at the scene inventoried the contents of the Oldsmobile but did not look into the trunk, and the car was towed into the nearby impound lot.
Lake County Sheriff's Detective Keith A. King testified that he spoke with Glavic the day after his arrest. Det. King said that Glavic admitted he transported two other men to Sammet's impound yard for the purpose of breaking in and stealing automobile equipment, but he would not give the detective their names until the prosecutor offered him a deal. Det. King declined to deal because one of the other perpetrators had already been caught.
Glavic argued in the court below and repeats the argument here on appeal that there was no evidence that Glavic was one of the perpetrators or that the perpetrators intended to commit a felony while inside the impound yard.[2]
As to the first point, it is true that Sgt. Tate could not identify Glavic as being one of the men he saw in the yard, but there was no need to prove that. The indictment charging him with breaking and entering put Glavic on notice that the state could prove that he was an accomplice,[3] and the jury was instructed on the law of complicity.
As to the second point, Glavic's own confession, as related by Det. King, that he drove two men to the impound yard in order forthem to steal automobile equipment, is sufficient to conclude the men in the yard acted with the purpose to commit a felony theft offense. That evidence is corroborated by the testimony of Sgt. Tate, who saw the two men slip into the yard and investigate the cars stored therein in a manner suggesting they were looking "to see if there was anything of value" inside. It is reasonable to infer from Sgt. Tate's observations that these men planned to commit a theft offense.
Taken as a whole, the evidence was more than sufficient to convict Glavic as an accomplice to the crime under R.C.2923.03(A)(2). The third assignment of error is without merit.
In part of the fourth assignment of error, Glavic argues that the conviction was against the manifest weight of the evidence, but we do not think the jury either lost its way or created a manifest miscarriage of justice by convicting Glavic on the basis of his own confession. That part of the fourth assignment is without merit.
In the first assignment of error, Glavic attacks the trial judge's decision to overrule his motion to suppress the stolen property found in his Oldsmobile after he was arrested.
Det. King testified, at the suppression hearing, that Junior Sammet called the Sheriff's Department and reported that he opened the trunk of Glavic's Oldsmobile and discovered a large amount of stereo equipment, similar to that which had been stolen from Sammet's impound yard during the summer.[4] The manner in which Sammet opened the trunk is not in evidence. The officer taking the call related the information to Det. King, who swore out an affidavit, upon which a judge of the Court of Common Pleas issued a search warrant. A second judge of that court essentially affirmed the first judge's decision to issue the warrant by overruling the motion to suppress.
In the affidavit, Det. King stated, in substance, that he had been involved in investigating a series of thefts from automobiles at Sammet's impound yard; that the Sheriff's department surveilled the yard for two weeks; that Sgt. Tate foiled a burglary on November 12, 1995; that Lt. Hess observed Glavic's Oldsmobile driving up and down the street right in front of the yard as if looking for someone; that Glavic was stopped and arrested for disorderly conduct; that the car was stored overnight in Sammet's yard; and that the next morning Sammet "contacted the Lake County Sheriff's Department and informed the Department that the trunk of said vehicle contained a large amount of stereo equipment."
Glavic's appellate counsel argues this affidavit is insufficient to establish probable cause to believe that evidence of a crime would be found in the trunk. The judge reviewing the affidavit at the suppression hearing thought it could reasonably be inferred from the context of the entire situation that stolen items would be found there. As the disagreement between the defense attorney and the common pleas judges would indicate, the affidavit presents a very close call. If the affidavit has enough substance to make its sufficiency arguable among legal experts, the affidavit surely has enough substance to permit lay officers, ordered to execute the warrant, to rely upon it.
In United States v. Leon (1984), 468 U.S. 897, 922, the Supreme Court held "the marginal or nonexistent benefits produced by suppressing evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant cannot justify the substantial costs of exclusion" of evidence obtained thereby. Accordingly:
 "`(S)earches pursuant to a warrant will rarely require any deep inquiry into reasonableness,' Illinois v. Gates, * * *, for `a warrant issued by a magistrate normally suffices to establish' that a law enforcement officer has `acted in good faith in conducting the search.' United States v. Ross * * *. Nevertheless, the officer's reliance on the magistrate's probable- cause determination and on the technical sufficiency of the warrant he issues must be objectively reasonable, cf. Harlow v. Fitzgerald * * *, and it is clear that in some circumstances the officer will have no reasonable grounds for believing that the warrant was properly issued." (Citations and footnotes omitted.) Id. at 922-923.
The Supreme Court set forth a number of situations that would not fall under the good-faith exception to the warrant requirement. Only one of those deals with the allegation in the case at bar — a faulty affidavit: "[A]n officer [would not] manifest objective good faith in relying on a warrant based on an affidavit `so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.' Brown v. Williams * * *." (Citation omitted.) Id. at 923.
The officers in Leon executed a search warrant on three residences suspected of concealing drugs. The warrant was issued on the affidavit of Officer Cyril Rombach, which described in detail efforts of the Burbank Police Department to substantiate an anonymous (and unproven) informant's tip about possible drug activity. They staked out the residences and observed known drug dealers coming and going. Despite the extensive corroborating police work, the district court found the affidavit was defective for failing to show the informant was reliable under Aguilar v.Texas (1964), 378 U.S. 108 and Spinelli v. United States (1969),393 U.S. 410. The government did not challenge that finding, so the Supreme Court accepted it without comment.
In speaking to the executing officer's faith, the Court said:
 "Officer Rombach's application for a warrant clearly was supported by much more than a `bare bones' affidavit. The affidavit related the results of an extensive investigation and, as the opinions of the divided panel of the Court of Appeals makes clear, provided evidence sufficient to create disagreement among thoughtful and competent judges as to the existence of probable cause. Under these circumstances, the officers' reliance on the magistrate's determination of probable cause was objectively reasonable, and application of the extreme sanction of exclusion is inappropriate." Id. at 926.
Like the affidavit in Leon, Det. King's affidavit had more than "bare bones." He described a lengthy investigation of a series of burglaries and the circumstances of Glavic's arrest, which made it almost certain that Glavic was involved in the foiled break-in, and which made it reasonable to think he might have been involved in the other break-ins as well. The items described in the warrant were found in his trunk after he was arrested. Although nothing was taken on the night of the foiled break-in, those itemsmight have been stolen during the prior break-ins. While this may not convince every magistrate that Glavic was probably involved in the prior break-ins, or that the stereo equipment was probably a product of those crimes, we cannot say the affidavit is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." Arguable, yes — entirely unreasonable, no. Under these circumstances, the officers' good faith reliance on the affidavit was reasonable, and the application of the exclusionary rule would be inappropriate. SeeState v. George (1989), 45 Ohio St.3d 325.
The first assignment of error is overruled.
In the second assignment of error, Glavic argues that the evidence gathered after the search of his trunk was insufficient to convict him for receiving stolen property because there was no proof he knew the stereo equipment was stolen. Again, we disagree.
Four automobile stereo amplifiers and a large, custom-made box with ten-inch speakers were retrieved from Glavic's trunk. When Det. King spoke with Glavic later that evening, he asked him about the items in the trunk in addition to his involvement in the break-in. Glavic said he purchased the equipment from a friend, but when Det. King pressed him for details, Glavic could not remember the name of this friend, did not know how much money he paid for the equipment, and could not say when the transaction took place.
Later, Det. King posted electronic inquiries on the LEADS system describing the seized stereo equipment and asking whether such equipment had been reported stolen. Sometime in March 1996, an officer from the Twinsburg Police Department contacted Det. King about a report of stolen stereo equipment that matched the description of the equipment found in Glavic's trunk. Det. King shipped the custom-made box with the ten-inch speakers to Twinsburg, where the victim of the burglary, one Crystal Jagers, positively identified it as the one stolen from her pick-up truck. The custom-made box fit perfectly in the rear portion of the cab. She kept the equipment, which was not introduced at trial.
Glavic was indicted on May 6, 1996. He was convicted on the strength of the testimony of Det. King, who related Glavic's story to the jury, and Crystal Jagers.
In State v. Taylor (June 17, 1994), Ashtabula App. No. 93-A-1796, unreported, we held "that a defendant's unexplained possession of stolen property may give rise to a permissive inference from which the jury may conclude that the defendant is guilty of a theft offense." See, also, State v. Hagwood (June 2, 1995), Lake App. No. 94-L-016, unreported. The custom-made box was obviously stolen. Glavic had it in his trunk. He could not explain from where he obtained it. This evidence is sufficient to infer that he knew it was stolen. Taylor, supra.
The second assignment is overruled.
In the second part of the fourth assignment of error, Glavic argues that his conviction for receiving stolen property is against the manifest weight of the evidence. In our view, the evidence was fairly clear that Glavic was guilty. He did not take the witness stand himself or produce the "mystery man" from whom he claimed he purchased the equipment to substantiate his "innocent purchaser" defense, which was patently unbelievable without corroboration. We cannot say that the jury clearly lost its way or created a manifest miscarriage of justice by convicting him. The second part of the fourth assignment is overruled.
In the fifth assignment of error, Glavic claims that certain comments made by the assistant prosecutor during the State's closing argument inflamed the jury and deprived him of a fair trial. Any error associated with these remarks is harmless beyond a reasonable doubt under Chapman v. California (1967),386 U.S. 18, because the combined evidence against Glavic (his confession that he was an accomplice to the break-in and the testimony of Det. King and Crystal Jagers as to the stolen property) was overwhelming. The fifth assignment is overruled.
The judgment of conviction is affirmed.
ROBERT A. NADER, PRESIDING JUDGE.
 O'NEILL, J., and CACIOPPO, J., Ret., Ninth Appellate District, sitting by assignment, concur.
[1] See State v. Thompkins (1997), 78 Ohio St.3d 380, for a detailed explanation of the standards of review for sufficiency and manifest weight challenges that we will employ in this matter.
[2] It is an essential element of the crime breaking and entering that the culprits enter the premises with the purpose of committing a felony, such as a theft offense. State v. Lane (1976), 50 Ohio App.2d 41,44-45.
[3] Hill v. Perini (C.A.6, 1986), 788 F.2d 406,407-408, citing State v. Perryman (1976), 49 Ohio St.2d 14.
[4] The state argued in the court below that the Fourth Amendment did not apply because Sammet was acting as a private citizen, whereas the Constitution only prohibits unreasonable searches conducted by the state.Burdeau v. McDowell (1921), 256 U.S. 465; State v.Morris (1975), 42 Ohio St.2d 307, 316; State v. Grant
(1993), 67 Ohio St.3d 465, 471. Glavic countered by arguing Sammet was an agent of the state for the purposes of the search under the rule stated in Coolidgev. New Hampshire (1971), 403 U.S. 443, 487. The cases in this area require a great deal of entanglement between the police and the private searcher before agency can be found. Compare State v. Bohannon
(Kan.App. 1979), 596 P.2d 190 with Smith v. State
(Ark.App. 1980), 594 S.W.2d 255. Since Sammet was not called to testify at the suppression hearing, the record is too scant for us to resolve the matter one way or the other. We therefore have chosen to dispose of this appeal on other grounds.