NOT DESIGNATED FOR PUBLICATION

No. 117,889

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellant*,

v.

SANDRA S. WILLIAMS,
*Appellee*.

MEMORANDUM OPINION

Appeal from Johnson District Court; THOMAS M. SUTHERLAND, judge. Opinion filed February 2, 2018. Reversed and remanded with directions.

*Jacob M. Gontesky*, assistant district attorney, *Stephen M. Howe*, district attorney, and *Derek Schmidt*, attorney general, for appellant.

*Danielle N. Wingfield*, of Lebaron-Ramos Law Firm, LLC, of Kansas City, for appellee.

Before GREEN, P.J., MALONE and ATCHESON, JJ.

PER CURIAM: The State charged Sandra S. Williams in Johnson County District Court with one count each of identity theft, theft, and criminal use of a financial card based on an allegation that while she was working at a fast food restaurant, she made an unauthorized purchase there using a credit card inadvertently left by a customer. While investigating the customer's report of an unauthorized transaction, both the restaurant manager and a police officer watched a surveillance video showing Williams participating in a suspicious transaction at a cash register. Before law enforcement

1

investigators could obtain a copy of the videotape, it was erased. Williams filed a motion in limine arguing that the best evidence rule precluded the manager, the police officer, or anyone else from testifying about what was depicted in the video. Applying the rule, as codified in K.S.A. 60-467(a)(2)(A), the district court granted the motion.

The State has filed an interlocutory appeal, arguing that the district court erred because no government agent acted with fraudulent intent to cause the loss of the videotape or to procure its loss. Absent such bad intent, the State says K.S.A. 60-467(a)(2)(A) does not bar testimony about the content of the videotape. We agree. The appellate record contains no evidence of fraudulent intent on the part of any government agent. We, therefore, reverse the ruling of the district court and remand with directions that Williams' motion in limine be denied. The case should then proceed from that evidentiary posture.

## FACTUAL AND PROCEDURAL HISTORY

On October 21, 2016, the State filed a complaint charging Williams with one count of identity theft, one count of theft, and one count of criminal use of a financial card. During the first day of the preliminary hearing on the charges, Nathan Marah testified that he had been the general manager of a Steak & Shake restaurant in Johnson County since August 2016. On September 15, 2016, he received a call from a customer who said he had been improperly double charged on his credit card for a purchase from the restaurant. Marah consulted the restaurant's order system, which keeps track of orders for the preceding month, and determined that the customer's card had been charged twice on the same day. The customer's first order was taken at the drive-thru at 1:55 p.m. under Williams' employee log-in. Marah then used the restaurant's video system to see who conducted the transaction at the time it occurred. Marah testified that the video showed Williams conducting that transaction. He testified that from what he could see on the video, the customer's credit card was not returned to him after he paid.

2

Marah was also able to locate in the restaurant's system the second transaction with the customer's credit card. Marah testified that the credit card was used at 8:02 p.m. under Williams' employee log-in to purchase a $10 gift certificate with a $15 tip. Marah, again, matched the time of the transaction to the video system. He testified that the video showed Williams on the customer side using a credit card to make a purchase. The video showed her trying the card several times and eventually getting help from another employee to complete the transaction.

Marah testified that he was not able to download the video from the Steak & Shake's video system. He testified that the system was old, and he could not figure out how to put a CD into it. He also could not find an option on the system that allowed him to write the video onto something that would record it. Marah testified the video was then erased, which he explained the system does every 32 days.

The person whose credit card had been used was the only witness to testify on the second day of the preliminary hearing. He testified that after he purchased food at the drive-thru at the Steak & Shake, he realized that his credit card was missing. He checked the purchases and discovered there was a second transaction at the Steak & Shake from the same day that he neither made nor authorized.

Based on the preliminary hearing testimony, the district court bound Williams over for trial on all three charges. Williams entered a plea of not guilty.

Williams filed a motion in limine and a motion to dismiss. Neither of these motions is included in the record on appeal, but one of the issues raised in the motions was that the State should not be allowed to present testimony describing what was shown on the surveillance video because the video had been erased and there were no copies of it.

On May 10, 2017, the district court held a hearing on Williams' motions. At the hearing, City of Overland Park Police Officer Nicholas Lowther testified that he went to Steak & Shake on September 16, 2016, and was shown a video by Marah. Officer Lowther testified that the video showed Williams helping a customer in the drive-thru lane. Lowther testified that when the customer departed, he left his credit card on a counter for handling drive-thru orders. Marah then forwarded the video several hours. At that point in the video, Officer Lowther saw Williams "at the front of the store manipulating the cash register with a bank card." She was on the customer side of the register, and it looked like she was completing an order on the machine. On cross-examination, Officer Lowther testified that he did not see Williams swiping a card during this transaction.

Officer Lowther testified that he did not get a copy of the video at that time. Nevertheless, Officer Lowther asked Marah to get him a copy of the video. Marah said he did not know how to make a copy of the video, but he would contact his manager the next day to make a copy. Additionally, Officer Lowther stated that receiving a copy of the video right away was not common practice. The police typically obtained a copy of the video at a later time. He stated that he reasonably expected that the restaurant would be able to provide him with the video.

In January 2017, the prosecutor asked Officer Lowther for a copy of the video, so Officer Lowther contacted Marah. Marah told Officer Lowther that he and another manager were not able to figure out how to burn the video onto a disk. According to Officer Lowther, Marah also told him that shortly after they reviewed the videotape, a power surge erased all of the stored surveillance recordings.

Defense counsel asked the court to take judicial notice of Marah's testimony from the preliminary hearing. The district court noted that Marah had not said in his testimony

4

that a power surge erased the video; he testified only that the video was erased 32 days after it was recorded.

The State argued that the motion in limine should be denied because no one acted fraudulently to prevent the video from being retained. Williams argued that the testimony regarding the video should not be admitted at trial because the police officers failed to make a good-faith effort to obtain the tape.

On May 24, 2017, the district court announced its ruling in open court. The district court held:

> "I am going to find that, you know, fraudulent intent is not particularly well defined. I certainly do not mean in this ruling to suggest or say that this officer intentionally or maliciously caused or allowed this videotape to be lost or destroyed with knowledge that it contain exculpatory information.
>
> "However, I do find that he could have and should have taken steps that he did not take, knowing full well that there was exculpatory or could be exculpatory evidence on the tape, when in fact he had some suspicion as to whether or not it could not or would not be done and, I believe, did understand at some point it would be erased.
>
> "So for those reasons, and an absence of specific case law on point, I am going to grant the motion; find that the best evidence rule does not permit testimony regarding what these other witnesses saw on the videotape."

On June 6, 2017, the district court filed a journal entry of its May 24, 2017 ruling granting Williams' motion in limine prohibiting any testimony in the State's case-in-chief regarding the contents of the video that the State failed to preserve. The district court, however, denied Williams' motion to dismiss. On June 13, 2017, the State filed a notice of interlocutory appeal of the district court's decision.

5

LEGAL ANALYSIS

*Williams' Challenge to Appellate Jurisdiction*

In her appellate brief, Williams argues that this court lacks jurisdiction because the State did not timely file its notice of appeal. She contends that to be timely, the State needed to have filed its notice of appeal within 14 days after the district court's oral ruling on the motion to exclude the testimony, which it did not do. The State filed a reply brief, arguing that it timely filed its notice of appeal within 14 days of the district court's journal entry ruling on the motion.

Pursuant to K.S.A. 2016 Supp. 22-3603, the prosecution may appeal from a pretrial order suppressing evidence. The statute covers not only an order suppressing evidence for a constitutional violation but also extends to any order precluding the State from admitting evidence that would materially inhibit its case against the defendant. *State v. Sales*, 290 Kan. 130, 134-36, 224 P.3d 546 (2010). The notice of appeal must be filed within 14 days after entry of the order. K.S.A. 2016 Supp. 22-3603. The district court may enter its order by oral pronouncement if it states its order on the record and expressly informs the parties the announcement alone is intended to constitute entry of the order. If the district court expects the order to be journalized, the notice of appeal is due within 14 days of the filing of the journal entry. *State v. Michel*, 17 Kan. App. 2d 265, 267-68, 834 P.2d 1374 (1992); *State v. Bohannon*, 3 Kan. App. 2d 448, 450-51, 596 P.2d 190 (1979).

In this case, the district court orally pronounced its ruling on the record, but it did not expressly state that it intended its announcement alone to constitute entry of the order. Therefore, when the district court signed and filed the proposed order submitted by the parties, that order became the district court's entry of ruling, and the 14-day time for filing a notice of appeal began that day. Because the State filed its notice of appeal within

6

14 days of the June 6, 2017 journal entry, it was timely filed, and this court has jurisdiction over the appeal.

As we have indicated, the State must show that the exclusion of evidence would "substantially impair" successful prosecution of the defendant to take an interlocutory appeal under K.S.A. 2016 Supp. 22-3603. *Sales*, 290 Kan. at 136. That's part of the jurisdictional showing, although it is judicial gloss on the statutory language. In its brief, the State makes an abbreviated representation that the testimony from the restaurant manager and the police officer as to the content of the security video was vital to the prosecution of Williams. Although the record on appeal might suggest that to be a debatable proposition, Williams has not disputed it.

*State's Challenge to District Court Ruling*

The State argues that the district court erred in suppressing any testimony regarding what is depicted in the lost videotape. Because a district court's ruling on a motion to suppress evidence usually presents a mixed question of fact and law, appellate courts use a dual standard when reviewing that decision on appeal. First, the court determines whether substantial competent evidence supports the facts underlying the district court's decision on a suppression motion. In conducting this review, courts refrain from reweighing evidence, assessing the credibility of witnesses, or resolving conflicts in the evidence. Second, the court conducts a de novo review of the legal conclusion reached by the district court. *State v. Garcia*, 297 Kan. 182, 186-87, 301 P.3d 658 (2013).

K.S.A. 60-467(a)(2)(A) states:

> "As tending to prove the content of a writing, no evidence other than the writing itself is admissible, except as otherwise provided in these rules, unless the judge finds

7

that: . . . the writing is lost or has been destroyed without fraudulent intent on the part of

the proponent . . . ."

If the district court makes a finding that the "writing" is lost or has been destroyed without fraudulent intent on the part of the proponent, a secondary source of evidence of the content of the writing is admissible. K.S.A. 60-467(b). The videotape constitutes a "writing"—a term defined elsewhere in the code of evidence to mean anything handwritten, typewritten, printed, and photographed, as well as "every other means of recording upon any tangible thing any form or communication or representation, including letters, words, pictures, sounds, or symbols, or combinations thereof." K.S.A. 60-401(m).

There is no question that the video was lost or destroyed. The State maintains, however, that the people who viewed the video should be permitted to testify about its contents because the video was destroyed without fraudulent intent by the State. The phrase "fraudulent intent" has not been specifically defined in the code of evidence.

Williams argues that there is substantial evidence of fraudulent intent and that the district court properly applied the law in excluding the evidence. According to Williams, fraudulent intent is shown by the contradictory testimony of the witnesses as to why the video was destroyed. The manager testified that the video was deleted through the system's normal process approximately 32 days after it was created, but the law enforcement officer testified that he was told it was deleted due to a power surge. Neither explanation, however, entails fraudulent intent, a state of mind indicative of deliberate conduct designed to mislead or to be deceitful. Williams also points to the district court's observation that the officer

"could have and should have taken steps that he did not take, knowing full well that there

was exculpatory or could be exculpatory evidence on the tape, when in fact he had some

8

suspicion as to whether or not it could not or would not be done and, I believe, did understand at some point it would be erased."

Despite Williams' argument, no evidence suggests that anyone had fraudulent intent in destroying the video. The restaurant manager specifically testified that when he was unable to figure out how to make a copy of the video, he sought out the district manager for help. But the district manager was unable to copy the video. As we have pointed out, the restaurant manager testified that the recording was deleted because the video system recycles after about 32 days. The police officer recalled the restaurant manager giving a different explanation for the lost video—a power surge that erased all of the stored security video. We fail to see in those differing accounts evidence suggesting some nefarious purpose behind the loss of the videotape.

More importantly, there is no evidence that any State agent had something to do with the loss or destruction of the videotape. Nor does any evidence indicate any State agent harbored some fraudulent intent to procure the loss of the videotape. Such an intent is an essential element to invoke the best evidence rule, since the State was the proponent or party seeking to introduce testimony about the content of the videotape. K.S.A. 60-467(a)(2)(A).

Officer Lowther testified that after Marah showed him the video, he asked Marah for a copy of it. Marah told him that he did not know how to copy it, but that he would ask his boss to make a copy. Officer Lowther testified that because he was a patrol officer, he only made a report, and then if someone is not arrested, the case goes to a detective who would be responsible for follow up. He testified that this case was assigned to a detective, and he did not know why the detective did not followup on the video. None of this evidence shows that the police had any intent to delete the video, let alone fraudulent intent.

9

Thus, the district court's conclusion that evidence was inadmissible under K.S.A. 60-467(a)(2)(A) fails because there is not substantial competent evidence to support the factual finding that the videotape was lost or destroyed through fraudulent intent of the proponent of that evidence. The district court's ruling essentially rests on its view that the responsible law enforcement agency was less than diligent in promptly obtaining a copy of the videotape. That may be. But the failure would be a matter of procrastination or negligence and not fraudulent intent. We, therefore, find the district court's conclusion to be insufficiently supported in the evidentiary record. The district court, therefore, erred in invoking the best evidence rule in K.S.A. 60-467(a) to preclude Marah and Officer Lowther from testifying at trial as to what they saw depicted in the videotape. See *State v. Dodd*, No. 108,312, 2014 WL 278706, at *2 (Kan. App. 2014) (unpublished opinion) (finding no error in district court's admission under an exception to the best evidence rule of store managers' testimony about seeing defendant take money from his register at McDonalds drive-thru on a later-deleted surveillance video).

Williams also argues that even if this court determines there was no fraudulent intent, the evidence is inadmissible because there is a genuine dispute as to its accuracy and it is unduly prejudicial. Moreover, Williams argues that the evidence is inadmissible because it violates her constitutional right to due process. Nothing in the record shows Williams presented those arguments to the district court. And the district court never addressed them. We decline to consider them for the first time on this interlocutory appeal. See *State v. Kelly*, 298 Kan. 965, 971, 318 P.3d 987 (2014).

We reverse the district court's order granting Williams' motion based on the best evidence rule and remand with directions that the motion be denied on that basis and the district court then proceed with the case in a manner consistent with our opinion.

10